The State of Ohio, Appellee, *v.* Johnson, Appellant.

(No. 78-8—Decided October 18, 1978.)

36

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, Mr. William E. Breyer, Mr. F. David Albanese and *Mr. Joseph G. Carr,* for appellee.

*Ms. Cheryl D. Grant* and *Mr. Robert R. Hastings, Jr.,* for appellant.

*Per Curiam.* Appellant has presented four propositions of law.

## I.

Appellant proposes that the trial court erred in overruling appellant's motion for acquittal and, in the alternative, seeks reduction of the aggravated murder charge to involuntary manslaughter upon the ground that the state failed to prove beyond a reasonable doubt that appellant "purposely cause[d] the death," under R. C. 2903.-01(B), of Otto Baum.

R. C. 2901.22(A) defines "purposely" as follows: "A person acts purposely when it is his *specific intention to* cause a certain result * * *." (Emphasis added.)

Although appellant admitted at trial to his participation in the robbery and his assault upon Otto Baum, he denied that he specifically intended to kill Baum.

The determination of whether appellant had the required culpable mental state must be made with a view to the totality of circumstances surrounding the beating of Otto Baum. As this court stated in paragraph four of the syllabus in *State* v. *Huffman* (1936), 131 Ohio St. 27:

"The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court."

Appellant contends that the following facts militate against a finding that he intended to kill Otto Baum: appellant, as well as his brother, wore a ski mask during the robbery, which he argues would have been superfluous if he had intended to kill Baum; appellant, although

armed with a sawed-off shotgun, did not shoot Baum; appellant handcuffed Otto Baum to the railing, which he claims would have been unnecessary if appellant intended to kill Baum.

We are not persuaded by such an interpretation of the facts. What the evidence adduced at trial indicates is that appellant, a young man, intending to rob his elderly landlord, criminally assaulted the man by striking him twice on the head with the barrel of a shotgun. The landlord was then handcuffed to a banister, where he was later discovered by police, bleeding and vomiting from what two physicians described, at trial, as an extensive skull fracture.

It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. *State* v. *Nabozny* (1978), 54 Ohio St. 2d 195; *State* v. *Lockett* (1976), 49 Ohio St. 2d 48; *State* v. *Perryman* (1976), 49 Ohio St. 2d 14; and *State* v. *Eaton* (1969), 19 Ohio St. 2d 145.

This court recently held, in *State* v. *Lockett, supra,* that where an inherently dangerous instrumentality is employed in the commission of an aggravated robbery, a homicide which occurs during the robbery is a natural and probable consequence thereof. It is clear, therefore, that appellant, under this proposition of law, can not escape liability for the fatal consequences of his criminal assault upon the deceased.

The mere fact that the shotgun was not fired at Baum, but used as a club by appellant, does not negate the presumption of an intent to kill since such a weapon is capable of causing death by either method.

In view of the foregoing, it was not error for the trial court to overrule appellant's motion for acquittal and to deny the requested reduction of the murder charge.

## II.

Appellant makes two arguments which, in essence, present the single issue of whether the beating suffered by Baum at the hands of appellant was the proximate cause

of his death. Appellant argues that the proximate cause of Otto Baum's death was the termination of the supplemental oxygen supply to the artificial respirator ordered by Dr. Walus.

It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life. *State* v. *Lytle* (1975), 194 Neb. 353, 231 N. W. 2d 681; *People* v. *Paulson* (1967), 80 Ill. App. 2d 44, 225 N. E. 2d 424. This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, *Parsons* v. *State* (1852), 21 Ala. 300; *Crews* v. *State* (1932), 44 Ga. App. 546, 162 S. E. 146, which is shown to have been an independent intervening cause of the patient's death. *State* v. *Cox* (1960), 82 Idaho 150, 351 P. 2d 472.

There was testimony at trial by both the coroner and attending physician that the proximate cause of death was severe head trauma as a result of an extensive skull fracture. This evidence was uncontroverted, but for the bare assertion that Dr. Walus decided to no longer continue the supplemental oxygen supply to the patient after four days of testing showed brain death.

Appellant contends further that the trauma suffered by the patient while in surgery caused a cardiac arrest which ultimately caused the death of the deceased. The evidence does not support such a contention. Defense presented no evidence that the actions by Dr. Walus or any other member of the staff of Cincinnati General Hospital constituted medical malpractice. The essence of Dr. Ritterhoff's testimony was that he could separate the trauma Baum may have suffered as a result of the surgery from that caused by the beating inflicted by appellant, which he concluded was the proximate cause of death. Appellant did not present any evidence to the contrary.

The question of cause of death was properly submitted to the jury by the trial court and there was sufficient

evidence from which the jury could conclude beyond a reasonable doubt that appellant proximately caused the death of Otto Baum. Appellant's propositions of law are without merit and overruled.

### III.

Appellant's fourth proposition attacks the constitutionality of the statutory procedure in Ohio for the imposition of the death penalty. Appellant argues that the unbridled discretion granted to the Juvenile Court to determine which juveniles will be bound over to the General Division of the Court of Common Pleas for criminal prosecution as an adult is constitutionally impermissible. This argument was specifically rejected by this court in *State* v. *Harris* (1976), 48 Ohio St. 2d 351.

Appellant contends that the Ohio death penalty statute is unconstitutional for failure to provide for review of all capital cases by this court in that all those cases in which the Court of Appeals reverses the death penalty are not reviewed by this court. This argument is without merit. This court reviews all cases in which the death penalty is to be imposed. Those cases in which the Court of Appeals has reversed the death sentence cease to be capital cases, which this court is mandated to review.

Appellant's final proposition is that the mitigating circumstances found in R. C. 2929.04(B) are unconstitutionally limited in scope. In view of *Lockett* v. *Ohio* (1978), U. S.     , 57 L. Ed. 2d 973, which held the statute to be violative of the Eighth and Fourteenth Amendments, the proposition is sustained.

This court having previously modified the judgment of the Court of Appeals by reducing appellant's sentence of death to life imprisonment, the judgment of the Court of Appeals as to appellant's conviction is hereby affirmed.

*Judgment accordingly.*

HERBERT, CELEBREZZE, P. BROWN, SWEENEY and LOCHER, JJ., concur.

LEACH, C. J., not participating.

42

WILLIAM B. BROWN, J., concurring. Since, under the Supreme Court's decision in *Lockett* v. *Ohio* (1978), U. S.   , 57 L. Ed. 2d 973, the defendant will not receive the death penalty as a result of the majority's presumption concerning the natural and probable consequences of using an inherently dangerous instrumentality in a robbery, I concur.