THE STATE OF OHIO, APPELLEE, *v.* CARTER, APPELLANT.

[Cite as *State v. Carter* (1992), 64 Ohio St.3d 218.]

(No. 91–963—Submitted May 20, 1992—Decided July 22, 1992.)

---

222

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *L. Susan Laker,* for appellee.

*Sand & Stidham, Chuck R. Stidham* and *Timothy A. Smith,* for appellant.

HERBERT R. BROWN, J. R.C. 2929.05(A) requires a three-part analysis in capital cases. First, we must review the judgment and consider Carter's claims of error. Second, we must independently weigh the evidence of aggravating circumstances and mitigating factors. Third, we must decide whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. For the reasons set forth below, we affirm the conviction and uphold the sentence of death.

I

*Date of Conviction*

In proposition of law I, Carter argues he was not convicted of his first murder until January 5, 1989 when he was sentenced to life imprisonment for aggravated murder. Carter argues that under Crim.R. 32(B), a judgment of conviction does not exist until sentence is imposed. See, also, R.C. 2945.75.

We agree. In *State v. Henderson* (1979), 58 Ohio St.2d 171, 12 O.O.3d 177, 389 N.E.2d 494, paragraph one of the syllabus, we held that a defendant, who had pled guilty but was awaiting sentencing for a theft offense, " * * * has not been previously convicted of a theft offense within the meaning of R.C. 2913.02(B)." *Henderson* noted that the majority of courts requires that a sentence be imposed before an offender can be regarded as having a prior conviction. *Id.* at 178, 12 O.O.3d at 181, 389 N.E.2d at 498. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 5, 520 N.E.2d 568, 572, following *Henderson,* held that a defendant had not been twice convicted, "as there is only one order of execution, there can be only one conviction." Accord *State v. Dapice* (1989), 57 Ohio App.3d 99, 102, 566 N.E.2d 1261, 1265; *State v. Darga* (1985), 30 Ohio App.3d 54, 56, 30 OBR 109, 111, 506 N.E.2d 266, 268. See, also, Annotation (1988), 65 A.L.R.4th 838, 887; Annotation (1949), 5 A.L.R.2d 1080, 1104. Nonetheless, a prior conviction in which sentence was

pending can be used for impeachment. *State v. Cash* (1988), 40 Ohio St.3d 116, 532 N.E.2d 111.

We find waiver inapplicable even though counsel failed to raise this point at trial. Carter's not guilty plea preserved his right to object to the alleged insufficiency of the evidence proving this prior conviction. The prosecution must prove each and every element of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

## II

### When the Murder Offense Occurred

However, accepting Carter's first proposition of law does not establish prejudicial error. A key remaining issue involves interpreting, in R.C. 2929.-04(A)(5), the words "[p]rior to the offense at bar, the offender was convicted * * *." The offense at bar refers to the aggravated murder of Johnny Allen. But when did the "offense at bar" occur? In propositions of law II and III, Carter argues that this "offense at bar" occurred on December 28, when the assault occurred. However, the court of appeals held:

" * * * [T]he 'offense at bar,' the aggravated murder of Johnny Allen, did not exist until Allen died on January 12 [*sic*], 1989. * * * [Thus] the language of the specification * * * refers to the period of time prior to January 12, 1989."

In our view, the language "the offense at bar" means the aggravated murder of Johnny Allen. Before Allen died, Carter could only have been charged with felonious assault or attempted murder. But when Allen died, it became possible to charge Carter with aggravated murder. The offense, in effect, matured then. An earlier conviction for assault, when the victim was still alive, would not have barred a subsequent murder conviction. See *State v. Tolbert* (1991), 60 Ohio St.3d 89, 91, 573 N.E.2d 617, 620; *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, paragraph six of the syllabus. As the Supreme Court stated in *Diaz v. United States* (1912), 223 U.S. 442, 449, 32 S.Ct. 250, 251, 56 L.Ed. 500, 503:

"The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial for the latter the death had not ensued, and *not until it did ensue was the homicide committed.*" (Emphasis added.)

The offense of aggravated murder matured on January 11, when Allen died. At that time, Carter had already been sentenced on January 5 for the previous aggravated murder. Thus, "[p]rior to the offense at bar, the offender was

convicted of an offense an essential element of which was the purposeful killing of * * * another * * *." R.C. 2929.04(A)(5).

In proposition of law III, Carter argues plain error because the trial court instructed the jury that Carter's prior conviction was an aggravating circumstance. In proposition of law VI, Carter argues this evidence was not harmless error. However, the trial judge did not err because evidence of the prior murder conviction was admissible as an aggravating circumstance, and the court's instructions were proper.

## III

### Ineffective Assistance of Counsel

In proposition of law V,[1] Carter argues that he was denied his right to the effective assistance of counsel. Counsel did not object to evidence of the prior conviction on the basis that the aggravated murder (the offense at bar) occurred on December 28, before Carter was convicted and sentenced for a prior murder on January 5, 1989.

Reversal of a conviction or sentence based on ineffective assistance of counsel requires meeting the two-prong standard of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Strickland* requires: (a) deficient performance, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland, supra,* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 692.

Carter fails to show that his counsel's performance at trial was deficient. Carter's counsel filed at least forty pretrial motions. Many were imaginative. Counsel contested almost every possible point. Moreover, counsel had no basis to object because evidence of the conviction was admissible.

## IV

### Death of Victim

In proposition of law VII, Carter argues that the state failed to establish when Allen became brain dead; hence, the evidence did not support the specification alleging a prior murder conviction.

We find the evidence sufficient to sustain the specification. In a review for sufficiency, the evidence must be considered in a light most favorable to the

---

1. No proposition of law IV was submitted in Carter's brief.

prosecution. *Jackson v. Virginia, supra; State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 930. " * * * [T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

The evidence established that Allen was alive when he entered University Hospital on December 28. Although Allen had a low brain system reflex function, his brain was working, his pulse was good, the doctors considered him alive, and life support systems were connected. Thus, he was alive then and life support systems kept Allen alive until January 11.

At trial, Dr. Bonnell testified that Allen "died on the eleventh of January," after he was pronounced brain dead. Since Dr. Bonnell was a coroner, his testimony is entitled to weight. See R.C. 313.19. Bonnell further testified, without any defense objection:

"Based upon my review of the medical records, Johnny Allen stopped breathing, and his heart stopped the day before he died, they got him going again, and the following day they did an examination that showed he was totally dead, in which case, he is dead. Even if you keep breathing for him, his brain is not working, and his life, his functions are not working."

R.C. 2108.30 specifies:

"An individual is dead if he has sustained either irreversible cessation of circulatory and respiratory functions or irreversible cessation of all functions of the brain, including the brain stem, as determined in accordance with accepted medical standards. If the respiratory and circulatory functions of a person are being artificially sustained, under accepted medical standards *a determination that death has occurred* is made by a physician by observing and conducting a test to determine that the irreversible cessation of all functions of the brain has occurred. * * * " (Emphasis added.)

Dr. Bonnell's testimony was sufficient to establish that Allen died on January 11.

V

*Intervening Cause of Death*

In proposition of law VIII, Carter argues that while he "is responsible for the death of Johnny Allen, he is not responsible for the *date* of his death." Carter argues that without medical intervention, Allen would have died within twenty-four hours of his injuries. Thus, medical intervention prolonged Allen's life until after Carter had been sentenced on his first murder conviction. From this, Carter argues that medical intervention was an intervening

and superseding cause of Allen's death as related to the prior murder specification.

Admittedly, Allen might have died sooner without medical intervention. However, Carter's proposition lacks merit. When Carter assaulted Allen, the likelihood of medical intervention on Allen's behalf was readily foreseeable. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 80, 381 N.E.2d 637, 640. Accord *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302; *State v. Losey* (1985), 23 Ohio App.3d 93, 23 OBR 158, 491 N.E.2d 379. Moreover, medical treatment for homicide victims is not an intervening cause. See *State v. Johnson, supra,* 56 Ohio St.2d at 40, 10 O.O.3d at 81, 381 N.E.2d at 640; Annotation, Homicide: Liability Where Death Immediately Results from Treatment or Mistreatment of Injury Inflicted by Defendant (1965), 100 A.L.R.2d 769, 783.

## VI

### *Sufficiency of Evidence*

In proposition of law IX, Carter contends that the evidence was insufficient to prove Carter caused Allen's death. Carter correctly points out that, pursuant to Evid.R. 703, facts or data upon which an expert bases his opinion must be perceived by him or admitted in evidence at the hearing. See *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, syllabus. Carter argues that Dr. Bonnell's testimony rested upon medical records not received into evidence and therefore Bonnell's testimony was inadmissible.

Carter's arguments are not persuasive. First, Dr. Bonnell based his opinion on the cause of Allen's death on his personal experience and observation in conducting Allen's autopsy, not simply Allen's medical records. As the coroner who performed the autopsy, Dr. Bonnell's testimony sufficiently established the cause of death. See R.C. 313.19.

Second, the evidence establishing that Carter proximately caused Allen's death rests upon more than Dr. Bonnell's testimony. The evidence established that Carter viciously choked, beat, and kicked Carter in the head over a twenty to twenty-five minute period causing unconsciousness and severe bleeding. In cases of severe injuries, expert medical testimony may not even be necessary. See *Commonwealth v. Gilman* (1979), 485 Pa. 145, 401 A.2d 335; *King v. State* (1964), 251 Miss. 161, 168 So.2d 637; *Diaz v. State* (Okla.Crim.App.1986), 728 P.2d 503; Annotation: Necessity and Effect, in Homicide Prosecution, of Expert Medical Testimony as to Cause of Death (1975), 65 A.L.R.3d 283, 292.

Third, three physicians, aside from Dr. Bonnell, testified to Carter's condition and his treatment in the hospital. Expert medical testimony established that Allen suffered from internal brain injuries, subdural hematoma, and prominent soft tissue injuries to the skull surface and neck. One of these physicians, Doctor Chris Miller, testified that Allen was unconscious and had a low level of brain system reflex functioning when he was admitted following Carter's assault. The evidence that Carter caused Allen's death is overwhelming.

# VII

## *Constitutionality*

In propositions of law X, XI, XII, and XIII, Carter makes constitutional challenges to Ohio's death penalty statute which we have previously rejected. Ohio's system of appellate review, including proportionality review, is constitutionally valid. *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237, 1246; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 176–177, 199, 15 OBR 311, 322, 341, 473 N.E.2d 264, 279, 296. Ohio's death penalty statute is neither arbitrary and capricious nor void for vagueness. *State v. Jenkins, supra,* at 169–170, 171, 15 OBR at 315–316, 317, 473 N.E.2d at 273–274, 275; *State v. Buell* (1986), 22 Ohio St.3d 124, 139, 22 OBR 203, 216, 489 N.E.2d 795, 808–809; *State v. Stumpf* (1987), 32 Ohio St.3d 95, 103, 104, 512 N.E.2d 598, 607. Additionally, Carter did not raise the issue in proposition of law XII at trial and thus waived it. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277. Carter's overall constitutional attack in proposition of law XIII has been rejected on numerous occasions. *State v. Poindexter, supra; State v. Buell, supra,* 22 Ohio St.3d at 135–136, 22 OBR at 213, 489 N.E.2d at 806; *State v. Jenkins, supra.*

# VIII

## *Sentence*

At the sentence hearing, Carter presented no evidence other than an unsworn statement. He did not ask for a presentence report or mental examination. In his unsworn statement, Carter said he was twenty-seven years old, had four brothers and two sisters, lived with one sister, and had three children of his own. He did not know his real father until he was fifteen years old and was raised by his mother and a troublesome stepfather. He left home at age fifteen and left school in the tenth grade.

Carter acknowledged that he was angry in his youth, but claims that he has since learned love and understanding through prayer and religion. He has learned to love people and to control his temper. Carter said he did not intend to kill Allen, that he was very sorry he did, and that he had prayed for Allen's recovery in the hospital. Carter repented his past and recognizes that the Lord is with him now.

We find the evidence proved the two specified aggravating circumstances beyond a reasonable doubt. The offense was committed "while the offender was a prisoner in a detention facility * * *." Also, "[p]rior to the offense at bar, the offender was convicted of * * * the purposeful killing of * * * another * * *." R.C. 2929.04(A)(4) and (5).

After independently assessing the evidence, we find nothing mitigating in the nature and circumstances of the offense.

In considering statutory factors, we find that Allen had not "induced or facilitated" the offense within the meaning of R.C. 2929.04(B)(1). Nor did Carter act under "duress, coercion, or strong provocation," as set forth in R.C. 2929.04(B)(2). The scant evidence suggesting that Allen initiated the confrontation appeared contrived and unbelievable.

Carter presented no evidence of mental problems; hence, R.C. 2929.04(B)(3) did not apply. Carter's age of twenty-seven negated R.C. 2929.04(B)(4). Carter's prior aggravated murder conviction precludes a finding that he had no prior serious criminal history under R.C. 2929.04(B)(5). No other actors were involved; hence, R.C. 2929.04(B)(6) is inapplicable. Aside from his expressed remorse, no "other factors" merited mitigation. R.C. 2929.04(B)(7).

After considering the case, we conclude that the aggravating circumstances outweigh the single mitigating factor of Carter's remorse and promised reformation beyond a reasonable doubt. The aggravating circumstances are significant. A jury had found Carter guilty of another aggravated murder just three weeks before he attacked Allen, and he was in jail awaiting sentencing for that murder. We find the death sentence appropriate, proportionate and not excessive when compared with similar cases where a defendant has a prior conviction for a purposeful killing. R.C. 2929.04(A)(5). *State v. Evans* (1992), 63 Ohio St.3d 231, 586 N.E.2d 1042; *State v. Davis* (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192; *State v. Spirko* (1991), 59 Ohio St.3d 1, 570 N.E.2d 229; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373; *State v. Mapes* (1985), 19 Ohio St.3d 108, 19 OBR 318, 484 N.E.2d 140. The sentence is also appropriate, proportionate and not excessive when compared with similar cases where a defendant was a prisoner in a detention facility. R.C.

2929.04(A)(4); *State v. Bradley, supra; State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585.

Accordingly, we affirm the conviction and the sentence of death.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.