The following appeal arises from the decision of the Mahoning County Court of Common Pleas overruling a motion for judgment of acquittal as related to a charge of murder. For the reasons set forth below, the decision of the trial court is hereby affirmed.
 I. FACTS
On March 26, 1995, Jerry Lee Avery, II, appellant, was traveling in a vehicle on the south side of Youngstown with three acquaintances. While so proceeding, the group of individuals observed a Jeep Cherokee being driven by Brian Gregory Johnson, decedent. Both vehicles pulled to the side of the street and both appellant and decedent exited their respective vehicles Following a brief discussion, appellant shot decedent once in the chest with a .25 caliber pistol. Appellant then immediately fled the scene. Two passengers in decedent's vehicle carried him to the Jeep and drove him to Southside Hospital where he later died Appellant was subsequently apprehended following a high speed police chase.
On March 27, 1995, the state filed a complaint in the Mahoning County Court of Common Pleas, Juvenile Division, charging appellant with murder. At the time the offense was committed, appellant was seventeen years of age. Pursuant to a motion by the state, the Juvenile Court relinquished jurisdiction on June 6, 1995.
Appellant was indicted by the Mahoning County Grand Jury on June 23, 1995, on one count of murder in violation of R.C2903.02(A) and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). Both counts were accompanied by firearm specifications. On July 5, 1995, appellant waived his right to a speedy trial and entered pleas of not guilty to all charges Following numerous continuances by counsel for appellant, this matter came on for trial on January 24, 1996.
At the close of the state's case, appellant filed a motion for acquittal pursuant to Crim.R. 29 (A) on both the murder charge and the aggravated robbery charge. Appellant asserted that the state had failed to properly prove the cause of death element as related to the murder charge in that it did not present testimony from a coroner or deputy coroner on the issue. Additionally, it was alleged that the state failed to present sufficient evidence to sustain the aggravated robbery charge. Upon review of the matter, the trial court granted the motion as to the aggravated robbery charge but overruled the motion as related to the murder charge. The jury began deliberating on January 29, 1996 and subsequently found appellant guilty of murder with a firearm specification.
On February 5, 1996, the trial court entered its judgment as to the sentencing of appellant. It was determined that appellant was to be sentenced to an indefinite term of imprisonment of fifteen years to life on the murder charge in addition to a three year term of actual incarceration on the firearm specification. A timely notice of appeal was filed pursuant to this entry on February 7, 1996. Although, a notice of cross-appeal was filed by the state, it was later voluntarily dismissed.
 II. ASSIGNMENT OF ERROR
Appellant's sole assignment of error on appeal reads:
 "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTION FOR DIRECTED VERDICT OF ACQUITTAL MADE BASED UPON THE FACT THAT THE STATE OF OHIO DID NOT MEET ITS BURDEN OF PROOF ON THE ELEMENT OF DEATH."
Appellant argues that his motion for acquittal should have been granted as the state failed to properly establish the fact and cause of death of decedent. The basis for this argument is a belief that statutory mandates were not followed in regards to the autopsy of decedent. The pathologist who supervised the autopsy and rendered his expert opinion thereon, Dr. Richard Cochran, was not a coroner nor was he appointed as a deputy coroner to make an official examination. Subsequent to the autopsy, a deputy coroner by the name of Dr. Padgitt viewed the body and entered findings as to the cause of death. However, at trial Dr. Padgitt failed to appear so the state relied upon the testimony of Dr. Cochran to substantiate the fact and cause of death. Additionally, the coroner's report signed by Dr. Padgitt was admitted into evidence. Eased upon these circumstances, appellant is of the belief that the state failed to provide the proper evidence and testimony required by statute as to vital elements of the murder charge.
 A. APPLICABLE LAW
In addressing a motion for judgment of acquittal, the dictates of Crim.R. 29 must be applied. According to Crim.R 29 (A):
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court: may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins(1997), 78 Ohio St.3d 380,386. A court shall not grant a motion for judgment of acquittal "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State vBridgeman(1978), 55 Ohio St.2d 261, syllabus. The Ohio Supreme Court further held in State v. Jenks(1991), 61 Ohio St.3d 259:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at the trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis added.) Id. at paragraph two of the syllabus.
The relevant elements of the offense of murder are provided in R.C. 2903.02(A) which states "[n]o person shall purposely cause the death of another * * *." The corpus delicti, meaning the body or substance of a crime, in a homicide prosecution involves two elements, i.e. the fact of death and the existence of the criminal agency of another as the cause of death. State v Manago (1974), 38 Ohio St.2d 223, 226. Under R.C. 313.19, the coroner's verdict provides the legally accepted "cause of death." R.C. 313.19 states in relevant part:
 "The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate, filed with the division of vital statistics, shall be the legally accepted cause of death, * * *."
Although the coroner's verdict establishes the physiological cause of death, it does not assign criminal responsibility for the death. State v. Cousin(1982), 5 Ohio App.3d 32, 35
Therefore, while the coroner's verdict is entitled to much weight on the issue of causation, it is not indispensable in order to prove the commission of a murder as the causal relationship in regards to criminal responsibility may be proven by other evidence. State v. Beaver(1997), 119 Ohio App.3d 385, 392, citing Manago, supra at 228. In fact it has previously been held that expert medical evidence is not always required to establish whether a death occurred as the result of the criminal agency of another. State v. Carter(1992), 64 Ohio St.3d 218, 226. In cases where the injuries inflicted are of a severe nature, a jury may infer that the injuries caused the death thereby fulfilling the criminal agency requirement. Id. Additional circumstances surrounding the offense may give rise to further support that the death resulted from the criminal agency of another. Id.
 B. ANALYSIS
In applying the tests established by the Ohio Supreme Court as related to motions for judgment of acquittal, it is clear that when viewed in its entirety, the evidence before the trial court supported its decision to deny appellant's motion for judgment of acquittal. The record provides ample support which would permit a conclusion that all relevant elements of the crime of murder had been proven beyond a reasonable doubt.
At issue is whether the state properly established the fact of death and the existence of a criminal agency of another as the cause of death. As counsel for appellee correctly indicates, the coroner's report was admitted into evidence by the trial court (Tr. at 839). Such evidence certainly supports the finding that a death occurred. Additionally, the coroner's report lists the legally accepted cause of death as massive trauma and shock due to a gunshot wound to the chest. The report goes on to specify that decedent came to his death by reason of homicide. These notations comply with the requirements of R.C. 313.19 and establish the fact of death based upon the physiological causes noted therein.
As to the second requirement of the corpus delicti of the crime, expert medical evidence is not always necessary to assign criminal responsibility for the death. Carter, supra. In instances such as the one in the case sub judice, the severity of the injuries inflicted may permit the jury to infer that death occurred as the result of the criminal agency of another. Id. The evidence clearly reflects that decedent sustained a single gunshot wound to the chest which was inflicted from a very close range. Numerous witnesses provided testimony that appellant had been responsible for inflicting the mortal wound. Additionally, appellant admitted upon direct examination to shooting decedent one time. The record further reflects that decedent was immediately taken to Southside Hospital where he died shortly thereafter. Despite the holding in Carter, medical evidence was on record in the form of the coroner's report which stated that the cause of death was massive trauma and shock resulting from a single gunshot wound to the chest. This evidence, when taken as a whole, provides overwhelming support to establish death by the criminal agency of another. Furthermore, there has been absolutely no indication that death occurred by means other than the gunshot wound.
Based upon what has been confirmed following an examination of the record, the Ohio Supreme Court's holding in State v. Cooper(1977), 52 Ohio St.2d 163, can be analogized to the case sub judice. In Cooper, the court was presented with medical testimony substantiating that the victim died as a result of strangulation Witnesses who first arrived at the scene testified that the victim's body was lying face down in a stream with a towel around her neck. As in the case at bar, no evidence was of record to indicate the death was caused by means other than the criminal agency of another. Based upon the information before it, the court came to the conclusion that the evidence overwhelmingly established "death by a criminal agency." Id. at 169. As the facts in the present case are similarly persuasive, we hold that sufficient evidence was of record to permit a jury to infer that the death resulted from the criminal agency of another. We are clearly not presented with circumstances such as those set forth in State v. Manago(1974), 38 Ohio St.2d 223 in which the court determined that no evidence was on record from which the jury could draw the inference that the victim met her death through the criminal agency of another. Id. at 227.
This court should note that it is not persuaded by appellants proposition that the coroner has a statutorily prescribed duty to give expert testimony on the fact and cause of death as no authority for this proposition is provided by appellant Furthermore, as outlined by this court above, the record reflects sufficient proof of these factors from the coroner's report which was admitted into evidence as well as the circumstances surrounding the incident.
Based upon the foregoing, sufficient evidence was before the trial court to establish the fact of death and the existence of a criminal agency of another as cause for the death.
For the foregoing reasons, the decision of the trial denying appellant's motion for judgment of acquittal is hereby affirmed.
COX, P.J., concurs.
DONOFRIO, J., concurs.
 APPROVED: ____________________________________ JOSEPH J. VUKOVICH, JUDGE