OPINION
{¶ 1} Randall T. Ball appeals from his conviction and sentence in Kettering Municipal Court on a misdemeanor charge of violating a civil protection order.
 {¶ 2} Ball advances two assignments of error on appeal. First, he argues that the evidence presented at trial is legally insufficient to sustain his conviction. Second, he contends his conviction is against the manifest weight of the evidence.
 {¶ 3} The record reflects that Ball was the subject of a domestic relations civil protection order ("CPO") that generally required him to "stay away" from a woman named Estelle Gibson. Trial testimony established that on the evening of October 12, 2004, Kettering police officer Eileen Gibson saw Ball driving in the vicinity of Estelle's residence. Officer Gibson knew about the CPO involving Ball and Estelle. She also knew where Estelle lived. Based on her belief that Ball's presence in the neighborhood violated the CPO, officer Gibson stopped him on a nearby street. When she mentioned the CPO to Ball, he denied being in violation of it. He also told her that he was on his way to a meeting at a local church. After establishing that Estelle was not home, officer Gibson declined to arrest Ball or charge him at that time. She still believed, however, that he had violated the CPO.
 {¶ 4} Kettering police detective Gary Voehringer later used a laser to measure the distance between Estelle's home and where officer Gibson had encountered Ball. The distance was 374 feet. Based on that evidence, Ball was charged with violating a condition in the CPO that states:
 {¶ 5} "5. RESPONDENT SHALL STAY AWAY FROM THE FAMILY ORHOUSEHOLD MEMBER(S) NAMED IN THIS ORDER. Respondent shall not be present within 500 yards (distance) of them, and shall refrain from entering any place where they may be found. This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters. If Respondent accidentally comes in contact with these family or household member(s) in any public or private place, Respondent must depart immediately."
 {¶ 6} Ball's only real defense at trial was that he inadvertently had driven near Estelle's residence and had not recklessly violated the CPO. A jury nevertheless convicted him of violating R.C. § 2919.27, which provides that no person shall recklessly violate the terms of a protection order. Following Ball's conviction, the trial court imposed a $1,000 fine and sentenced him to 180 days in jail. The trial court then suspended the fine and 120 days of the jail sentence. It also stayed execution of the sentence pending the outcome of this appeal.
 {¶ 7} In his first assignment of error, Ball asserts that condition number five set forth above did not prohibit him from driving his car within 500 yards of Estelle's residence when she was not home. Based on the premise that his conduct did not violate the order, he argues that the prosecutor presented legally insufficient evidence to sustain his conviction.[1]
In response, the State claims the plain language of condition number five required Ball to stay 500 yards away from Estelle's residence regardless of whether she was home.
 {¶ 8} Upon review, we find Ball's reading of the disputed language to be the most reasonable. The first sentence sets forth one of several requirements contained in the CPO. In capital letters and bold type, it states: "RESPONDENT SHALL STAY AWAYFROM THE FAMILY OR HOUSEHOLD MEMBER(S) NAMED IN THIS ORDER." Standing alone, this general directive to "stay away" from Estelle (the only person named in the order) provides little guidance as to the specific conduct it prohibits.[2]
 {¶ 9} The particulars of the "stay away" requirement are found in the second sentence. It states: "Respondent shall not be present within 500 yards (distance) of them, and shall refrain from entering any place where they may be found." This sentence plainly imposes two specific obligations on Ball: (1) he is not to come within 500 yards of Estelle; and (2) he is not to enter any place where she may be found. In the present case, the record is devoid of evidence that Ball violated either requirement. He did not come within 500 yards of Estelle when he drove by her house, and he did not enter her house or any place where she might be found.
 {¶ 10} The third sentence of the disputed paragraph states: "This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters." This sentence seems to be intended to clarify the scope of what precedes it. In particular, the third sentence's mention of specific buildings and places appears to amplify the second sentence's prohibition against Ball entering any place where Estelle may be found. Because it lists certain buildings and places that are capable of being entered, the third sentence appears to identify specific places that Ball may not enter. If this is the meaning of the third sentence, then Ball did not violate the order because he did not enter anything.
 {¶ 11} We recognize, however, that before listing specific places, the third sentence refers to "[t]his order to stay away." Thus, it is possible the third sentence is not intended to identify specific places Ball may not enter, despite the fact that it immediately follows a general prohibition against him entering places. Instead, it is possible that the third sentence clarifies the first half of sentence number two, which requires Ball to stay away from Estelle by prohibiting him from coming within 500 yards of her. But if this is the intended meaning of sentence, then ambiguity exists. Because the only specific "stay away" language in the CPO requires Ball to stay 500 yards away from Estelle's person, sentence number three fairly could be read as clarifying that he must avoid Ball when she is at any of the specified locations. Under this interpretation of the language, Ball did not violate the order because Estelle was not home.
 {¶ 12} Finally, it is possible that the third sentence is intended to identify places Ball must stay 500 yards away from regardless of whether Estelle is present. But it does not say so. If such a requirement were intended, the issuing judge easily could have made the order clear by adding the following italicized words to the second sentence:
 {¶ 13} "Respondent shall not be present within 500 yards (distance) of them or any place where they may be found, and shall refrain from entering any place where they may be found. This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters."
 {¶ 14} As it currently exists, however, the third sentence fails to make clear that it obligates Ball to stay 500 yards away from Estelle's residence even when she is not home. In our view, such an interpretation of the CPO's language is not the most reasonable or natural one. Our conclusion is further bolstered by the fourth sentence, which, like the first two sentences, addresses Ball having actual contact with Estelle.
 {¶ 15} Contrary to the State's argument on appeal, our interpretation of the CPO does not lead to an "absurd" result. The State claims allowing Ball to come within 500 yards of Estelle's residence when she is not present will enable him to "harass" her by lurking in front of her house every day and fleeing immediately upon her return home. Under the State's scenario, however, Ball's conduct would violate the first condition in the CPO, which prohibits him from "bothering, harassing, [or] annoying" Estelle. Thus, our interpretation of the fifth condition does not create a loophole and frustrate the purpose of the CPO. But even if it did, the problem would lie not in our interpretation but in the drafting of the fifth condition.
 {¶ 16} Finally, we find the State's reliance on State v.Ball (May 4, 2001), Montgomery App. No. 18408, to be misplaced.[3] The CPO in Ball read as follows:
 {¶ 17} "[Mr. Ball] is ordered to stay away from [Ms. Rice] and any other family member and [Mr. Ball] shall not be present within two blocks or 500 yards of them, wherever they may be found, even with their permission. This includes the buildings, grounds, and parking lots of their homes, businesses, places of employment, schools, day care centers, and babysitters."
 {¶ 18} Although the foregoing language is similar to the CPO now before us, the issue raised on appeal in Ball was different. The appellant in Ball argued that the State had failed to prove he came within 500 yards of the protected person's residence. The appellant in Ball did not argue that the CPO only precluded him from coming near the protected person's residence when she was home, and our opinion does not reveal whether she was home. In the present case, appellant Ball does not dispute that he came within 500 yards of Estelle's home. His argument is that he did not violate the CPO because Estelle was not home. Because our earlier decision in Ball involved a different legal issue, our ruling here does not conflict with it.
 {¶ 19} Based on the reasoning set forth above, we conclude that appellant Ball's act of driving his car in the vicinity of Estelle's residence when she was not home did not violate the terms of the CPO. As a result, the evidence presented at trial was legally insufficient to sustain his conviction under R.C. §2919.27. Ball's first assignment of error is sustained.
 {¶ 20} Having sustained Ball's first assignment of error, we need not address his second assignment of error as it is moot.
 {¶ 21} The trial court's judgment entry is reversed and Ball is ordered discharged from any criminal liability.
Fain, J., and Valen, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Although Ball did not raise this issue through a Crim.R. 29 motion at trial, we previously have recognized that "a not-guilty plea alone is sufficient to preserve a sufficiency-of-the-evidence argument for appeal, even where the issue is not raised at trial." State v. Osterfeld, Montgomery App. No. 20677, 2005-Ohio-3180, at ¶ 8, citing State v. Jones,91 Ohio St.3d 335, 346, 2001-Ohio-57, and State v. Carter,64 Ohio St.3d 218, 223, 1992-Ohio-127. Moreover, even if a defendant could waive a challenge to the sufficiency of the evidence by failing to raise the issue at trial, it would remain subject to plain-error analysis. Osterfeld, supra, at ¶ 19 (reasoning that it would constitute plain error for a trial court to enter a conviction based on legally insufficient evidence).
[2] Insofar as the first sentence can be read to have meaning standing alone, the record is devoid of evidence that Ball was anywhere near Estelle when officer Gibson saw him. The undisputed evidence is that Estelle was not home. Thus, the evidence would not support a finding that he failed to "stay away" from her.
[3] Parenthetically, we note that State v. Ball (May 4, 2001), Montgomery App. No. 18408, did not involve the appellant in the present case.