[Cite as *State v. Nunley*, 2021-Ohio-117.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| DAVID NUNLEY | : | Case No. 19 CAA 08 0050 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
Pleas, Case No. 19 CRI 03 0229


JUDGMENT:                                          Affirmed


DATE OF JUDGMENT:                          January 20, 2021


APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

RACHEL C. LAING                              CARLY M. EDELSTEIN
145 North Union Street                        VICTORIA A. BADER
3rd Floor                                            250 East Broad Street
Delaware, OH  43015                          Suite 1400

Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant David Nunley appeals the July 30, 2019 judgment of conviction and sentence of the Delaware County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

## Facts and Procedural History

{¶ 2}   This matter involves the sexual and physical abuse of half-siblings A.Z., A.G., and D.N. Appellant is the father of D.N. A.Z. and A.G. are appellant's step-children. Throughout the time frame relevant to this matter, T.N., the mother of all three children, was afflicted with alcoholism and later suffered a stroke. Both conditions rendered T.N. incapable of properly parenting. Appellant was therefore solely responsible for childcare.

{¶ 3}   On January 23, 2019, 11 year-old D.N. went to Molly Fortune, his intermediate school guidance counselor to talk. Fortune noted D.N. was teary, trembling, and fidgety. D.N. disclosed his father had touched him inappropriately. Fortune called Delaware County Child Protective Services (CPS) to report D.N.'s disclosure.

{¶ 4}   Fortune also called Meghan Vituccio, a guidance counselor at the high school were D.N.'s half-sister A.G. attended regarding D.N.'s disclosure. Vittuccio already had an appointment scheduled with A.G. that day to discuss her upcoming graduation. Vituccio covered that subject and then spoke with A.G. about what D.N. had told Fortune A.G. became uncharacteristically emotional. While Vituccio had known A.G. to be quiet and timid, she had never seen her cry. A.G. admitted D.N. had disclosed his abuse to her and gave Vituccio some details of what her brother had shared. A.G. also disclosed her own sexual and physical abuse at the hands of appellant. Fortune reported this disclosure to CPS. Delaware County Sheriff's Office detectives Chadwick Sloan and Michael Inglish

arrived to speak with A.G. At A.G.'s request, Fortune sat with A.G. while the detectives spoke with her. She described A.G. as "terrified."

{¶ 5}   The same day, detectives went to appellant's mother's home where the family was temporarily staying and spoke with D.N. D.N. was initially calm, but became very upset and began to cry and shake violently. Detectives described him as very scared. D.N. demonstrated how he was positioned when his father sexually abused him – facing the sofa with his knees on the floor and his chest on the seat cushion. After speaking with D.N. and appellant, appellant was taken into custody. D.N. hugged the officers and thanked them. D.N. and A.G were both later taken to the Children's Advocacy Center at Nationwide Children's Hospital in Columbus, Ohio for forensic interviews.

{¶ 6}   On January 25, 2019, Detectives Sloan and Inglish met with A.Z. at a library in Dayton Ohio where A.Z. currently lives. A.Z. had been in voluntary counseling for some time prior to their visit, and had recently disclosed to her counselor the sexual abuse she had suffered at the hands of appellant. A.Z. believed that was the reason for the detective's visit. A.Z. was dismayed to learn D.N. her siblings had also experienced abuse as she believed she was appellant's only target.

{¶ 7}   Based on the investigation in this matter, on March 29, 2019, appellant was charged by indictment with seven counts of rape, six against A.Z. and one against D.N. Each count of rape also contained a sexually violent predator specification. The indictment also contained three counts of gross sexual imposition, one count for each child, and one count of endangering children pertaining to A.G.

{¶ 8}   Appellant pled not guilty to the charges and elected to proceed to a jury trial on the rape, gross sexual imposition, and child endangering charges, and a bench trial for the sexually violent predator specification.

{¶ 9}   A.G. was eighteen years old at the time of trial. She testified the family lived in a two bedroom, one bath house. She and A.Z. shared a room, their mother slept in the other bedroom, and appellant and D.N. slept in the living room until A.Z. went to college. Then she and D.N. shared a room. Appellant slept on the sofa in the living room.

{¶ 10} A.G testified living with appellant was hard because they argued a lot. To make matters worse, her mother was confined mostly to her bedroom after suffering a stroke in 2008, leaving appellant in charge. Beginning when she was 7 or 8, appellant wielded a heavy hand when disciplining A.G., making her pick a whip-like branch off a tree for him to use to use as a switch on her buttocks and legs. On one occasion he punched her in the face, and on another kneed her in the face.

{¶ 11} All three children testified regarding chores around the house, including "the rubbing chore." This chore entailed appellant making the children rub his legs and feet for a half hour under the guise of assisting with "regulation of his blood" due to his diabetes. Appellant required this chore performed at night, often after the children had already gone to bed. If they missed a time performing this chore, they had to make up the missed time.

{¶ 12} A.G. testified she once entered the living room to see A.Z. standing in front of appellant with her shirt open and appellant rubbing A.Z's breasts. Being naïve as to what was occurring, she approached them, removed her shirt, and appellant rubbed her chest as well.

{¶ 13} A.G. also testified that appellant would insist on helping A.Z and D.N. shower because D.N. "has poor hygiene" and because A.Z. had dandruff and on a couple occasions they had lice.

{¶ 14} D.N. was 12 years old at the time of trial and hesitant to discuss anything that happened between he and his father in any detail. He testified he recalled going to his guidance counselor and discussing things that happened when he was "6 or 7 years old." D.N. testified "[m]y dad, he – he raped me." Asked what that meant D.N. explained being forced to endure inappropriate touching. He testified his father used his "groin" which the state clarified meant penis. Throughout his testimony D.N. answered questions stating he did not remember, and as far as penetration was concerned "I would say yes, probably, most likely, but I don't know." He did however, demonstrate his position when the abuse took place the same as he did for Detectives Sloan and Inglish, and stated his father was positioned behind his butt. D.N. also testified he had observed his father punch and kick A.G.

{¶ 15} Portions of D.N's forensic interview were played for the jury. D.N. was as hesitant to discuss the matter during his forensic interview as he was at trial. During the interview D.N. referred to a penis as a "D" and stated his father's D had touched his butt "kind of inside, kind of outside." He further repeatedly stated he did not want to talk about the matter because "it reminds me of it."

{¶ 16} A.Z. was 21 years old at the time of trial. She testified her mother was an alcoholic, had a stroke when A.Z was 11 years old, and was in rehabilitation for six months thereafter. She stated after her mother came home, she continued to drink and stayed in her bedroom most the time.

{¶ 17} A.Z. did not remember seeing appellant touch A.G. but confirmed all the children were expected to perform the rubbing chore. A.Z. testified she was required to rub appellant's penis and testicles in addition to his legs and feet. She recalled the day appellant began inappropriately touching her as the day after Christmas, 2009 when she had fallen asleep on the couch and woke up because appellant was touching her breasts and crotch. She recalled he told her to be quiet.

{¶ 18} A.Z testified appellant's behavior escalated from touching and digital penetration to vaginal sex by summer of 2010. She described specific instances of digital penetration; once while appellant knelt beside her bed and also when he would insist on helping her shower and use the opportunity to insert his fingers into her vagina. She could not say how many times appellant digitally penetrated her vagina because it was a frequent occurrence.

{¶ 19} A.Z. also testified to specific instances of vaginal rape; once when appellant put her on a stool in the kitchen and raped her and another time in the living room on the couch. On one occasion appellant performed cunnilingus on A.Z. When these things happened, appellant would tell her to be quiet and think about her family.

{¶ 20} A.Z. told a friend about the abuse long before she told her counselor in Dayton. When law enforcement became involved A.Z. lied and said it was a consensual encounter with a peer. She lied because she feared for her family, did not know what appellant was capable of, and feared he would become violent.

{¶ 21} A.Z. recalled the day appellant stopped abusing her. She was 14 years old. Appellant was drinking, and A.Z. had never seen him drink before. He became

intoxicated, tried to approach her wearing nothing but his underwear and a sock, and fell on the floor. A.Z. called 911 and appellant was taken to the hospital.

{¶ 22} Detective Sloan testified regarding his conversation with appellant prior to his arrest. Appellant told Sloan he would go into the girl's room at night and just lay his arm over them to let them know dad was there so they would fall asleep. He also claimed both girls had a habit of lying on top of him while he was on the sofa, and claimed even 21-year-old A.Z. still did this. He did not deny helping D.N. in the shower and washing his private parts. He stated he did this because D.N. has poor hygiene and smelled even after showering. Appellant denied inappropriate contact with the girls but inexplicably stated that girls become more attractive between the ages of 12 and 14.

{¶ 23} After hearing all the evidence and deliberating, the jury retuned verdicts of guilty of six counts of rape and two counts of gross sexual imposition against A.Z., and guilty of one count of endangering children against A.G. The jury found appellant guilty of attempted rape rather than rape as it pertained to D.N, and found appellant not guilty of gross sexual imposition as it pertained to A.G. After a bench trial on the sexually violent predator specifications the trial court found appellant is a sexually violent predator. He was sentenced to an aggregate prison term of 79.5 years to life.

{¶ 24} Appellant filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 25} "MR. NUNLEY'S CONVICTIONS FOR RAPE, ATTEMPTED RAPE, AND GROSS SEXUAL IMPOSITION WERE NOT SUPPORTED BY SUFFICIENT

EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTION 10, OHIO CONSTITUTION."

II

{¶ 26} "MR. NUNLEY'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION."

{¶ 27} We address appellant's assignments of error together. Appellant argues his conviction for count five of the indictment, charging appellant with the rape of A.Z. when she was under the age of 13 is not supported by sufficient evidence. Appellant further argues the state failed to prove the victims were not his spouse, rendering his convictions for rape, attempted rape and gross sexual imposition against the sufficiency of the evidence. Finally, appellant argues his convictions are against the manifest weight of the evidence, alleging the testimony of the victims was inconsistent, and the timing and circumstances of their disclosures questionable.

{¶ 28} On review for sufficiency, a reviewing court is to examine the evidence presented at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 29} Appellant argues his conviction for count five of the indictment, is against the sufficiency of the evidence because the state failed to prove A.Z. was under the age of 13 at the time of the offense. We disagree.

{¶ 30} Count five of the indictment charged appellant with rape pursuant to R.C. 2907.02(A)(1)(b), and alleged the rape took place between December 1, 2009 and September 29, 2010 and involved digital penetration.

{¶ 31} R.C. 2907.02(A)(1)(b) provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age."

{¶ 32} First, as appellant notes, his counsel did not present this argument in his Crim.R. 29 motion for acquittal at the close of state's evidence. However, as also noted by appellant, a failure to timely make a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. *State v. Jones*, 91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163; *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992).

{¶ 33} Next, while A.Z.'s testimony was not precisely chronologically organized, she did testify appellant's assaults against her progressed from appellant touching her

private parts the day after Christmas 2009, to digital penetration, to vaginal intercourse approximately summer of 2010:

[The State:] * * * How quickly after the *digital penetration* did it move to sex?

[A.Z.:] Within a few – I'd say a few weeks to a few months. I don't remember.

[The State:] O.K. So if it's December when it started –

[A.Z.:] Yeah.

[The State:] -- when do you think, and can you roughly, how quickly would it have moved to sex? You can give me a time range.

[A.Z.:] I think by summer, but I don't remember.

[The State:] So by summer of 2009, the defendant had had sex with you?

[A.Z.:] By summer of 2010.

{¶ 34} Transcript of trial (T.) 292-293, emphasis added.

{¶ 35} A.Z. therefore testified that touching and digital penetration had been taking place a few weeks to a few months before appellant began subjecting her to vaginal intercourse. A.Z. testified her date of birth is September 30, 1997. She was under the age of 13 until September 29, 2010, nine months after appellant's initial assault upon her. A.Z. further testified from Christmas 2009 to the day she called 911 after finding appellant passed out on the floor, appellant sexually abused her frequently. On average, every

other week. T. 315. We find this evidence sufficient to support the jury's finding that A.Z. was under 13 the first time appellant digitally penetrated her vagina.

{¶ 36} Appellant further argues his convictions are not supported by sufficient evidence because the state failed to prove the victims were not married to appellant. We disagree.

{¶ 37} Each victim testified regarding their relationship to appellant. A.G. testified she is not married and appellant is her stepfather T. 178-179. D.N. testified he is not married and appellant is his father. T. 241. A.Z. testified she is not married and appellant is her stepfather. T. 272, 277. This testimony is sufficient to support the jury's finding that appellant was never married to any of his victims.

{¶ 38} Appellant also argues his convictions are against the manifest weight of the evidence. He argues the timing and circumstance surrounding the disclosures, specifically that each victim disclosed abuse that had taken place years prior within a week's time call into question the legitimacy of their allegations. Appellant also points to testimony from A.Z. and A.G. revealing they had both previously disclosed their abuse at the hands of appellant and then recanted. Appellant further argues inconsistent testimony by A.Z., and D.N.'s inability to testify to details of the offense also weigh against the manifest weight of the evidence.

{¶ 39} The credibility of witnesses and the resolution of conflicting evidence are matters for the finder of fact to resolve. The jury was free to accept or reject any and all of the evidence offered by the state and assess the credibility of the victims. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight

or sufficiency of the evidence." *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 WL 297252 (Mar. 23, 2000). Jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶ 40} The jury heard and observed each of the three victims as they testified and had the opportunity to weigh their credibility accordingly. The jury also heard about the timing and circumstances surrounding the disclosures of each victim and was free to weigh the matter as it saw fit. As noted by appellant, D.N. did have difficulty testifying and talking to the forensic interviewer at the CAC and testimony was equivocal as to whether or not appellant penetrated D.N.'s anus with his penis. But we also note that appellant was convicted of attempted rape of D.N. rather than rape as originally charged. Appellant was further acquitted of gross sexual imposition as it pertained to A.G, and acquitted one count of rape against A.Z. Our review of the entire record reveals no significant inconsistencies or other conflicts in the state's evidence which would demonstrate such a profound lack of credibility of any individual witness which would lead us to a conclusion the jury to lost its way in weighing the evidence and credibility of the witnesses in reaching its verdicts. Based on the forgoing, we find appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

{¶ 41} The first and second assignments of error are overruled.

{¶ 42} The judgment of conviction and sentence of the Delaware County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.

EEW/rw