OPINION
Defendant-appellant, Roy W. Henize, appeals from his conviction following a bench trial in the Brown County Court for aggravated menacing in violation of R.C. 2903.21(A). For the reasons that follow, we affirm the trial court's decision.
On June 23, 1998, Patrolman Robert Freeland of the Georgetown Police Department filed a complaint in the Brown County Court charging appellant with aggravated menacing in violation of R.C.2903.21(A), a misdemeanor of the first degree. The probable cause affidavit attached to the complaint alleged that on June 7, 1998, at approximately 7:30 p.m., a racial argument started between four juvenile boys[1] and appellant at his residence, 208 E. North Street, Georgetown, Ohio. The affidavit further stated that as the argument became heated, appellant got a gun and threatened the four boys, stating that he would kill them. Brandon Murdock was listed as the victim. Appellant entered a plea of not guilty and a bench trial commenced on January 20, 1999.
At trial, Jacobs, age fourteen, and White, age fifteen, testified that they were with Murdock and McKenzie when the confrontation occurred. Jacobs testified that they were walking down the street on their way to play basketball when he saw appellant "sitting on his porch with his son and wife and he had a gun." Jacobs testified that appellant started talking to Murdock regarding an incident at the IGA, and then appellant's son said, "blow a hole in them." Jacobs testified that appellant then stood up and pointed the gun at Murdock. Jacobs described the gun as being long and brown and having two barrels. On cross-examination, Jacobs maintained that when appellant pointed the gun at Murdock, they "paused for a minute, just for a few seconds" and then they ran. In addition, Jacobs testified he couldn't see appellant do anything else because he was running away; he "was just trying to get away."
White testified that they were walking down the sidewalk on their way to play basketball when he saw appellant and his wife sitting in a chair and their son, Mike, standing in the front yard. White testified that Mike and appellant asked him and Murdock if they had been at the IGA. White testified that after Murdock responded "yeah," appellant pointed a double-barreled shotgun at them and started talking about how they hang around with black people. White testified that appellant stated "he was going to kill our black girlfriends," and then Mike told appellant to put a hole in their stomach. In response, White stated that they "were scared," and that they "stood there a second in shock" because they thought they were "going to get shot."
On cross-examination, White testified that after appellant stood up with the shotgun he "didn't want to move," and he thought appellant "was going to shoot [him] in the back." White further testified that he thought appellant was pointing the gun at himself (White) and Murdock, but he could not tell for sure because he was too scared. White testified that an officer interviewed him at Tom Lightfoot's home, where White informed the officer that he saw appellant with a gun.
The state presented several witnesses who observed the confrontation between appellant and the four boys. Tonda Sparks, age fourteen, who was walking in the vicinity of appellant's residence on that day, testified that appellant "pulled a gun out on kids walking down the street." Tonda Sparks testified that appellant was talking to Larry White, Jacobs, and someone else when he stated "he was going to put a hole in their stomach." Then she saw the kids take off running. Tonda Sparks further testified that appellant made the statement to the boys while putting two bullets in the gun, and then he put the gun in the trunk of his car. She described the gun as being really long.
Rachel Sparks, age seventeen, testified that she was driving her aunt's car on a day in June 1998 when she saw appellant with a shotgun. Rachel Sparks testified that "he was waiving it around yelling stuff," and "he was just waiving it at everybody. He had it towards my car and he was waiving it at the boys on the sidewalk." She stated that the boys on the sidewalk included Murdock, White, Chris Frazier, and others. When asked if appellant tried to shoot the gun, Rachel Sparks testified that appellant was telling them that he was going to shoot them and that she thought he was saying it to everybody because she was scared. Rachel Sparks further testified that she saw appellant point the gun at four boys across the street from him and then she saw the boys take off running. Afterwards, she saw appellant put the shotgun in the trunk of his car.
Another witness, Jesse Sparks, age twelve, testified that he was walking toward appellant's residence on June 7, 1998 when he saw appellant holding a two-barrel shotgun and standing in his driveway. Jesse Sparks testified that he saw appellant point the gun and threaten to use it. Jesse Sparks stated that he saw appellant with the shotgun while police officers were there.
Patrolman Freeland testified that on June 7, 1998, the Brown County Sheriff's Department dispatched him to appellant's residence in reference to a man with a gun. When Freeland arrived at appellant's residence, Patrolman Cyrus Baker of the Georgetown Police Department was already there talking to appellant and appellant's son. At that time, Freeland did not see any visible evidence of a shotgun or gun, but he did see an argument going on between appellant and approximately nine or ten juveniles across the street. Freeland took the names of the juveniles and asked them to go to their residences where an officer would speak to them later. Freeland testified that he did not become aware of the location of the gun until he took the juveniles' statements later.
After the state rested its case-in-chief, defense counsel made a motion for acquittal pursuant to Crim.R. 29. Defense counsel argued that there was no consistency among the state's witnesses that a gun was present, or how it was employed, if at all, by appellant to clearly indicate a possibility of causing another serious physical harm. Defense counsel also pointed out that Brandon Murdock,[2] who was named as the primary victim, did not testify. The state then made a motion to amend the complaint to include the names of Jacobs and White as victims. Over defense counsel's objection, the trial court allowed the state to amend the complaint and subsequently overruled appellant's Crim.R. 29 motion.
Appellant and his wife, Mary Henize, then testified during defendant's case-in-chief. Appellant and his wife testified that on June 7, 1998, appellant did not have a gun, and that they were on their front porch with their son when four boys stopped across the street with "super soaker" squirt guns. Mrs. Henize maintained that the four boys started calling them names and squirting them with something smelling like ammonia. Appellant testified that the boys were talking and he did not converse with them, but his son started "mouthing off" to them when they squirted their "super soakers" toward appellant's yard. On cross-examination, appellant testified that two of the boys remained at the scene with their squirt guns waiting for the police to arrive.
In its January 21, 1999 judgment entry, the trial court found appellant guilty of aggravated menacing. Appellant appeals this decision and presents five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN THAT THE EVIDENCE PRESENTED WAS NOT SUFFICIENT TO SUPPORT THE FINDING OF GUILTY OF AGGRAVATING MENACING.
In his first assignment of error, appellant contends that the evidence presented did not support the finding beyond a reasonable doubt that the crime of aggravated menacing had been committed. Appellant maintains that the evidence presented was insufficient as a matter of law to establish that there was a shotgun at his property with which to have committed the offense, or establish that the alleged victim believed that appellant would cause him serious physical harm.
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, rehearing/reconsideration denied, 79 Ohio St.3d 1451. When making this inquiry, the appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Id. at 390 (Cook, J., concurring). The court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Smith
(1997), 80 Ohio St.3d 89, 113, rehearing/reconsideration denied,80 Ohio St.3d 1471, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2903.21(A) defines "aggravated menacing" as:
 [n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person * * * or a member of the other person's immediate family.
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. State v. Johnson (1978),56 Ohio St.2d 35, 39.
In the instant case, the state presented evidence which, when viewed in a light most favorable to the state, establishes the elements of aggravated menacing. Both Jacobs and White testified that on June 7, 1998, they were with McKenzie and Murdock when they saw appellant with a shotgun at his residence. White testified that appellant threatened them with the shotgun and that they were scared because they thought they were going to be shot. Both Jacobs and White testified that after appellant pointed the gun at Murdock, they all ran.
Appellant relies heavily on the fact that Murdock did not testify at trial as to his state of mind. However, evidence of one's belief of serious physical harm may be established by circumstantial evidence. See State v. Shumaker, 1994 Ohio App. Lexis 571, at *13 (Feb. 18, 1994), Drake App. No. 1332, unreported. From the testimony of Jacobs and White, inferences can be drawn regarding Murdock's state of mind that, if believed, would indicate that he believed he was in danger of being shot.
Furthermore, other witnesses corroborated Jacobs' and White's testimony. Both Rachel and Tonda Sparks testified that they observed the confrontation between appellant and a group of boys that included Murdock, Jacobs, and White. Rachel and Tonda Sparks testified that they heard appellant make threatening remarks to the group of boys, and saw him brandish a shotgun at them that caused the boys to take off running.
Viewing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found the elements of aggravated menacing proven beyond a reasonable doubt. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN THAT THE CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, appellant maintains that the trial court clearly lost its way and created a manifest of miscarriage of justice and that his conviction must be reversed because it was contrary to the manifest weight of the evidence.
Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380,386-87, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175. A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Preston
(Sept. 20, 1999), Butler App. No. CA99-02-028, unreported, at 3-4, citing State v. Eskridge (1988), 38 Ohio St.3d 56, 59 (citation omitted).
In the instant case, we cannot say that this is the exceptional case where the trial court lost its way in finding appellant guilty of aggravated menacing. Appellant maintains that he is entitled to a reversal of his conviction because the state presented witnesses whose testimony varied widely, Jacobs and Jesse Sparks's testimony was impeached by Patrolman Freeland, and neither Jacobs nor Murdock were victims because neither one testified that they believed appellant would cause them serious physical harm. Appellant further asserts the only testimony that is consistent is the testimony of appellant and his wife.
Although appellant and his wife testified that appellant did not have a gun, the state presented substantial evidence which would tend to establish otherwise. Appellant's contentions are not troubling given the substantial evidence that the state presented that appellant had a shotgun and threatened the four boys with it.
Although a part of the testimony is in direct contradiction, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the trier of fact neither lost its way nor created a manifest miscarriage of justice by finding appellant guilty of aggravated menacing. Therefore, we find that the manifest weight of the evidence supports appellant's conviction. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY ALOWING [SIC] THE PROSECUTION TO CHANGE THE IDENTITY OF THE VICTIM OF THE OFFENSE AT THE END OF THE STATE'S CASE.
In his third assignment of error, appellant contends that the trial court committed reversible error when it allowed the state to change the identity of the victim of the offense after the close of the state's case. Appellant maintains that the identity of the crime was changed and/or the accused was misled and prejudiced by the omission of such element. We do not agree.
In reviewing this assignment of error, we first must determine if the trial court erred by allowing the state to amend the complaint. Crim.R. 7(D) permits amendment of the complaint at any time before, during, or after a trial with respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no changed is made in the name or identity of the crime charged. See, also, R.C. 2941.30;State v. O'Brien (1987), 30 Ohio St.3d 122, paragraph two of the syllabus; State v. Hanselman (Aug. 12, 1985), Brown App. No. CA84-11-016, unreported, at 6.
An amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged. State v. Owens (1975), 51 Ohio App.2d 132, 149, citingIn re Stewart (1952), 156 Ohio St. 521; Dye v. Sacks (C.A.6, 1970), 279 F.2d 834. In Owens, the trial court allowed the state to change the name of the victim on a charge of armed robbery at the end of the state's case. Owens at 149. The amendment was a matter of form and not of substance and allowed the state to cure a variance between the victim listed in the indictment and proof of the actual victim at trial. Id.
In the instant case, the record reveals that the trial court allowed the state to amend the complaint to include the names of Jacobs and White as victims at the end of the state's case in chief.[3] The amendment merely allowed the state to cure a variance between the victim named in the probable cause affidavit and proof of the actual victims at trial. Appellant was still charged with aggravated menacing under the same code section and at the same time and place. The amendment of the complaint to include White and Jacobs as victims did not change the name or identity of the crime charged.[4] See Owens,51 Ohio App.2d at 149.
Next, we must determine if appellant was misled or prejudiced by the amendment. In O'Brien, the court recognized that an indictment can be amended to include a missing element of the offense "if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." O'Brien, 30 Ohio St.3d 122, at paragraph two of the syllabus. Crim.R. 7(D) provides that:
 [i]f any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to * * * a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.
Appellant maintains that he was misled and prejudiced by the timing of the amendment at the end of the state's case. Specifically, appellant argues that if Jacobs and White would have been named as victims prior to trial, his trial counsel would have had the opportunity to cross-examine them as to their belief that appellant caused them serious physical harm. In support of his position, appellant relies on State v. Barnecut (1988), 44 Ohio App.3d 149,153, wherein the court stated that:
 [a]ny variance of proof outside the parameters of time established by the indictment may constitute a separate offense. This analysis suggests a bright-line test, i.e., that an accused be tried for the crimes alleged in the indictment, and that any evidence outside the time period established in the indictment may constitute a separate offense requiring separate process.
Appellant suggests that this court may hold that any variance in proof outside the parameters of who the victim is in the complaint may constitute a separate offense. We find appellant's reliance upon Barnecut is misplaced.
In Barnecut, the court developed a bright-line test for determining whether an amendment to the time frame in an indictment violates the accused's due process rights, particularly in child abuse cases. Barnecut at 153. The indictment charged the accused with several counts of sexual misconduct, the first two of which occurred during the months of May and June 1983, respectively. Id. at 150, 153. After its case-in-chief, the state successfully moved to amend the indictment so that the first count allegedly occurred during the summer months of 1981, while the second count occurred during the summer months of 1983. Id.
at 150. The court found that "[i]f no evidence is presented that the alleged offenses occurred within the bracketed time frames specified in the indictment, the counts in the indictment relating to those offenses should be dismissed." Id. at 153.
Unlike Barnecut, this case deals with variance in the proof of the victims in a complaint. A complaint compels the state to provide a written statement of the essential facts constituting the charge offense. Crim.R. 3.[5] Generally, the name of the victim is not an essential element of a charged offense. State v.Phillips (1991), 75 Ohio App.3d 785, 792. We therefore find Owens
is dispositive on the issue of variance in the proof of a victim at trial. In Owens, as discussed earlier, the court found that variance in the proof of a victim did not change the name or identity of the crime charged and therefore did not prejudice the appellant. Owens, 51 Ohio App.2d at 149.
In the instant case, the complaint affidavit listed Murdock as the victim, but it also stated that the charge resulted from an argument between appellant and four juvenile boys. This provided appellant with sufficient facts and notice to defend against a charge of aggravating menacing involving more than one victim. Furthermore, our review of the record reveals that defense counsel adequately cross-examined both Jacobs and White. As such, we find that the amendment in question did not prejudice appellant's defense or otherwise deny him due process of law. Appellant's third assignment of error is therefore overruled.
We will discuss appellant's last two assignments of error in reverse order.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF HIS RIGHT TO CONFRONTATION, SECURED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION, AND ALSO AS A SEPARATE VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW, SECURED TO HIM BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, ART. I. SEC. 16 OF THE OHIO CONSTITUTION.
In his fifth assignment of error, appellant maintains that he was denied his right to confrontation under the Sixth andFourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Appellant's argument is that the trial court violated his right to confrontation when it failed to inquire into why Murdock did not testify at trial, which appellant maintains denied him the right to confront his accuser.
Initially, we note that appellant was afforded the opportunity to confront all of the testifying witnesses at trial. Appellant does not argue that he was unconstitutionally denied the right to cross-examine any of the testifying witnesses. Rather, appellant maintains that he was denied the opportunity to cross-examine Murdock, who did not appear at trial to testify.
The Confrontation Clause of the United States Constitution and its Ohio counterpart guarantee a defendant the right to confront witnesses. Delaware v. Van Arsdall (1986), 475 U.S. 673,678, 106 S.Ct. 1431, 1435; State v. Self (1990), 56 Ohio St.3d 73,76. The purpose of this right is to provide the opportunity to cross-examine those witnesses who appear against the defendant.Van Arsdall at 678; Self at 76.
There is no rule, constitutional or otherwise, which requires a trial court in any criminal case to produce a victim of an alleged crime solely for the purpose of permitting the defense an opportunity to cross-examine him where, as here, the elements of the offense can be established by other witnesses. See Shumaker, 1994 Ohio App. Lexis 571 at *13. If the defendant believes a victim has significant exculpatory evidence, there is nothing to prevent him from securing the victim as a witness at trial.
In the instant case, the state-produced testimony from two of the four boys, Jacobs and White, involved in the confrontation with appellant. Appellant fully exercised his right to cross-examine both of them and the other witnesses presented by the state. As a result, we hold that because appellant was given his constitutionally protected right to cross-examine all of the state's witnesses, there was no impingement upon appellant's right of confrontation guaranteed under the United States and Ohio Constitutions. Accordingly, appellant's fifth assignment of error has no merit.
Assignment of Error No. 4:
DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
In his fourth assignment of error, appellant contends that he received ineffective assistance of counsel. Appellant maintains his trial counsel was ineffective by failing to request a continuance or postponement pursuant to Crim.R. 7(D) when he was misled and prejudiced by the amendment to the complaint, failing to point out that the state did not prove an essential element of the offense, and failing to elaborate upon the fact that he did not have an opportunity to confront Murdock.
To demonstrate a claim of ineffective assistance of counsel, a defendant must first show that under the circumstances counsel's representation did not meet the objective standard of reasonable competence. Second, a defendant must show that he was prejudiced at trial as a result of this deficiency. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills
(1992), 62 Ohio St.3d 357, 370, rehearing denied, 63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992), 505 U.S. 1227,112 S.Ct. 3048. Only if the defendant demonstrates that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against defendant would have been more favorable will a reviewing court find prejudice. This probability must be sufficient to undermine confidence in the case's outcome. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied, Bradley v.Ohio (1990), 497 U.S. 1011, 110 S.Ct. 3258.
The effectiveness of counsel must be reviewed in light of the evidence against the defendant, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065;State v. Lytle (1976), 48 Ohio St.2d 391, 397, vacated in part on other grounds, Lytle v. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3135. The appellate court must not second-guess trial counsel's strategic decisions. State v. Carter (1995), 72 Ohio St.3d 545,558, certiorari denied, Carter v. Ohio (1995), 516 U.S. 1014,116 S.Ct. 575.
The first claim of ineffective assistance of counsel cited by appellant maintains that his trial counsel should have requested a continuance pursuant to Crim.R. 7(D) after the trial court allowed the state to amend the complaint. Specifically, appellant claims that a continuance would have allowed his trial counsel to prepare himself better on the changes made by the amendment. As we have already discussed in response to his third assignment of error, the amendment did not prejudice appellant. Even if appellant's counsel had moved for a continuance or postponement, we do not perceive that appellant would have been entitled to such relief. There is nothing in the record that suggests that appellant could have effectively challenged the evidence. Furthermore, "[t]here is no duty on the part of defense counsel to unnecessarily delay a trial by requesting a continuance to search for evidence, the existence of which is based upon pure conjecture." State v.McVay, 1984 Ohio App. Lexis 9243, at *4-5 (Apr. 20, 1984), Lucas App. No. L-83-408, unreported. As such, we find that counsel's decision not to request a continuance did not constitute deficient performance and did not prejudice appellant.
The second claim of ineffective assistance cited by appellant maintains that his counsel failed to point out that the state did not prove Murdock or Jacobs believed that the offender would cause them serious physical harm. This claim is not substantiated by the record. As we discussed earlier in response to appellant's first assignment of error, the state presented sufficient evidence from which a reasonable trier of fact could find that the three victims believed appellant would cause them serious physical harm. Therefore, we cannot say that defense counsel's failure to point out this alleged missing element of the offense rose to the level of ineffective assistance of counsel or prejudiced appellant.
Appellant's final claim of ineffective assistance involves his trial counsel's failure to raise the issue that appellant did not have an opportunity to confront Murdock, which violated appellant's constitutional right to confrontation. For the reasons advanced in the disposition of appellant's fourth assignment of error, this claim is without merit. There is nothing in the record to indicate that the trial would have ended differently but for the testimony of Murdock.
In view of all the evidence presented against appellant, we find that trial counsel's representation of appellant was neither professionally unreasonable nor prejudicial to appellant, and therefore the fourth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] The record reveals that the four boys were Brandon Murdock, Chris Jacobs, Ryan McKenzie, and Matthew Ryan White.
[2] The record reveals that the state subpoenaed Brandon Murdock to testify at trial, but the state was unable to serve him with the subpoena because he had moved.
[3] The probable cause affidavit filed with the complaint named Brandon Murdock as the victim. After the amendment, Brandon Murdock, Chris Jacobs, and Ryan White were named as the victims.
[4] Based upon the facts of this case, we find that there was no need to amend the complaint. There is no requirement that the victim must be present in court or testify. Proof of the offense against Murdock was established by circumstantial evidence. See State v. Shumaker, 1994 Ohio App. Lexis 571, at *13, (Feb. 18, 1994), Drake App. No. 1332, unreported.
[5] Crim.R. 3 states: "Complaint. The complaint is a written statement of the essential facts constituting the offense charge. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oath."