DECISION AND JUDGMENT ENTRY
{¶ 1} Edward Casto appeals his convictions for breaking and entering, theft, and receiving stolen property. Casto contends that his convictions are against the sufficiency and weight of the evidence because his co-defendant[1], Mike McIntosh, testified that Casto was not involved in the crimes. Because we find that the prosecution offered evidence from which the jury could properly determine Casto's guilt, we affirm his convictions.
 {¶ 2} On June 18, 1999, Doug and Mary Ellen Lowe returned home from a weekend camping trip only to discover that tools were missing from their garage and from Mr. Lowe's truck. Before they had left to go camping Mrs. Lowe's brother, McIntosh, had stopped by for a brief visit and Mrs. Lowe informed him of their plans.
 {¶ 3} On the day they returned home from camping, McIntosh and Casto stopped by the Lowes' house. The two men asked about purchasing lumber from Mr. Lowe so that they could fix up a trailer that Casto had recently bought. Mr. Lowe told them that he didn't have any lumber to sell them. When it came time for McIntosh and Casto to leave, McIntosh could not start the truck he was driving. McIntosh claimed that he had lost the keys.[2] After Mr. Lowe and Casto helped McIntosh start the truck, McIntosh and Casto left, each in their own vehicle.
 {¶ 4} On June 19, 1999, the police arrived at 1504 Glendale to investigate a breaking and entering and theft. That same day they also went to the Lowe residence to investigate a theft. During the course of these investigations, the police identified McIntosh and Casto as possible suspects. The police went to Casto's house to question Casto and McIntosh about the crimes. After confronting the two men, the police recovered the stolen goods.
 {¶ 5} During his trial, Casto testified that he followed McIntosh as the two left the Lowes' house. On the way back to Casto's house, McIntosh pulled into the driveway at 1504 Glendale. That address was a house being constructed by McIntosh's former employer, Larry Fouss. According to Casto, McIntosh said that he wanted to retrieve a tool-belt from the house. Casto testified that he left McIntosh at 1504 Glendale and proceeded home.
 {¶ 6} McIntosh testified that he alone was responsible for the crimes at 1504 Glendale. He also testified that when Casto discovered that he had stolen tools from the Lowe residence, Casto asked him to remove the tools from the house. According to McIntosh, he hid the tools around the house rather than removing them. He testified that Casto was unaware the tools were still in the house.
 {¶ 7} After a one-day trial, the jury found Casto guilty of breaking and entering, theft, and receiving stolen property. The court sentenced him to twelve months on each charge, the sentences to run concurrently. Casto appeals, raising the following assignment of error: In violation of due process, Mr. Casto was found guilty of breaking and entering, theft, and receiving stolen property on insufficient evidence and his verdict was entered against the manifest weight of the evidence.
 {¶ 8} Casto argues that the evidence presented at trial was insufficient to sustain a verdict of guilty. Casto relies on McIntosh's trial testimony that McIntosh was solely responsible for the crimes. Casto contends that McIntosh's testimony absolves him from all guilt.
 {¶ 9} The state claims that Casto waived his argument regarding the sufficiency of the evidence when he failed to renew his Crim.R. 29(A) motion for acquittal. The Ohio Supreme Court has held that the failure to raise a sufficiency argument at trial does not waive that argument on appeal. State v. Jones 91 Ohio St.3d 335, 346, 2001-Ohio-57,744 N.E.2d 1163; See also State v. Carter (1992) 64 Ohio St.3d 218, 223,1992-Ohio-127, 594 N.E.2d 595. The appellant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. Thus, we find that Casto has not waived his sufficiency argument despite not renewing his Crim.R. 29 motion for acquittal after the completion of all the evidence. Moreover, a conviction based upon insufficient evidence would almost always amount to plain error. See,State v. Arrowood (Sept. 27, 1993), Pike App. No. 93CA05, at 6.
 {¶ 10} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991) 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 11} The jury found Casto guilty of breaking and entering and theft for the incident at 1504 Glendale. Breaking and entering is defined as: "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * * or any felony." R.C. 2911.13(A). In defining theft, R.C.2913.02(A)(1) states: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services without the consent of the owner or the person authorized to give consent."
 {¶ 12} Casto argues that because McIntosh testified Casto did not participate, there is insufficient evidence to sustain a guilty verdict. However, the state presented ample evidence from which the jury could conclude that Casto was guilty. Keith Oliver testified that at seven or seven-thirty on the night of June 18, 1999, he drove by 1504 Glendale and noticed two pick-ups parked in the driveway. According to Oliver's testimony, he noticed "some ladders and some other stuff" in the trucks. He described the trucks as a black S10 four-wheel drive and another Chevy pick-up. The photographic evidence indicates that Casto drove a dark truck that is very similar to an S-10.
 {¶ 13} After Oliver's testimony, Officer Poling took the stand. He testified that on June 19, 1999, he, along with Detective Nohe and Detective Fitch, went to Casto's house to speak to McIntosh and Casto about the crimes. Casto was not there when they arrived but arrived later in a dark pick-up truck. Officer Poling approached Casto's truck to speak with him. While talking to Casto, Officer Poling noticed a piece of the insert from the fireplace at 1504 Glendale in the bed of Casto's pick-up truck. Officer Poling also testified that Casto led them to the back of the house where they recovered the goods stolen from 1504 Glendale. After recovering the stolen items, Officer Poling took Casto to the Marietta Police Department. While entering the police department, Officer Poling and Casto passed the truck McIntosh had stolen. At that time, according to Officer Poling's testimony, Casto indicated that the truck was one of two he and McIntosh had used to "pick up stuff in out at Glendale." Casto's admission is substantive evidence that the state may rely upon in proving his guilt. See Evid.R. 801(D)(2). Moreover, on rebuttal, Detective Nohe testified that McIntosh told him both McIntosh and Casto stole the property from 1504 Glendale. While this testimony is not substantive evidence of Casto's guilt, it is probative of McIntosh's credibility. See Evid.R. 613 and 616.
 {¶ 14} In his defense, Casto maintained that he was not involved in the incident at 1504 Glendale. He testified that the fireplace insert was in the bed of his truck because he had seen it lying in his driveway, had noticed the screws in it, and had picked it up so he wouldn't run over it. According to his testimony, he did not know that the items stolen from 1504 Glendale were behind his house until an hour before the police came. He also denied making any statement to Officer Poling about his being involved in the breaking and entering and theft from 1504 Glendale.
 {¶ 15} McIntosh also testified on Casto's behalf. He testified that he alone was responsible for the breaking and entering and theft at 1504 Glendale. However, McIntosh also admitted that there were things he couldn't remember because he "was doing a lot of drugs back then." When he was asked if Casto had stopped at 1504 Glendale, he stated: "If he did stop, then it was to tell me he was, you know, going on home or — I don't — I'm pretty sure I was by myself in there." In addition, McIntosh testified that he had never taken a fireplace unit or the gas logs from a fireplace unit.
 {¶ 16} After reviewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a rational trier of fact to conclude that Casto was guilty of breaking and entering and theft beyond a reasonable doubt.
 {¶ 17} The jury also found Casto guilty of receiving stolen property (Lowe's tools) in violation of R.C. 2913.51(A). R.C. 2913.51(A) reads: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 18} Casto testified that when he realized McIntosh had stolen tools from the Lowe residence and brought them into his home he asked McIntosh to remove them. McIntosh confirmed that Casto had asked him to remove the tools from the house. However, McIntosh testified that instead of removing the tools he hid them around Casto's house. He testified to hiding the tools in the oven, dryer, hall closets, and "just anywhere [he] could hide something." According to Casto, he was unaware that the tools were hidden throughout his house.
 {¶ 19} Both Officer Poling and Detective Nohe testified that they found the tools stolen from the Lowe residence inside Casto's house. According to their testimony, after they entered the house both McIntosh and Casto showed them where the tools were hidden in the house. Detective Nohe testified that "* * * it was a joint effort on both of their parts, of where this property was stolen and located in that residence."
 {¶ 20} We find that a rational juror, when viewing the evidence in a light most favorable to the prosecution, could conclude that Casto was guilty of receiving stolen property beyond a reasonable doubt.
 {¶ 21} In addition to arguing that the state's evidence was insufficient to sustain a guilty verdict, Casto also argues that his convictions are against the manifest weight of the evidence. The legal concepts of sufficiency and weight of the evidence are different. Statev. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Therefore, even though we have already addressed the sufficiency of the evidence, it is still necessary to consider the weight of the evidence because it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. See State v. Robinson
(1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
 {¶ 22} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-94,1998-Ohio-533, 702 N.E.2d 866. We are also guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 23} Casto argues that the jury's verdict is against the manifest weight of the evidence because McIntosh testified that Casto was not involved in the breaking and entering and the theft. Furthermore, Casto argues that his conviction for receiving stolen property is against the manifest weight of the evidence since McIntosh testified that he hid the items throughout Casto's house without Casto's knowledge.
 {¶ 24} The state presented evidence that two pick-up trucks filled with ladders and "some other stuff" were seen at 1504 Glendale. Officer Poling testified about finding the piece of fireplace insert from 1504 Glendale in Casto's vehicle. In addition, Officer Poling testified that Casto later admitted to him that he was involved in the breaking and entering and theft at 1504 Glendale. Moreover, Detective Nohe effectively impeached McIntosh's credibility via McIntosh's prior inconsistent statements. Regarding the receiving stolen property charge, Officer Poling and Detective Nohe testified that both McIntosh and Casto showed them where the stolen property was hidden.
 {¶ 25} Questions of witness credibility are primarily the province of the jury. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The jury is free to believe all, part, or none of the testimony of each witness who appears before it. State v.Harriston (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144; see also Statev. Caldwell (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. While both Casto and McIntosh testified that Casto was not guilty of the offenses charged, the state offered witness testimony indicating Casto was involved in the crimes and that McIntosh may have been lying in his trial testimony. After reviewing the evidence, we are not persuaded that the jury either lost its way or created a manifest miscarriage of justice. There exists substantial evidence upon which the jury could reasonably conclude that all of the essential elements of the offenses were established beyond a reasonable doubt. Accordingly, the appellant's assignment of error is overruled and the judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J. Concur in Judgment and Opinion.
[1] Casto and McIntosh were originally charged in the same indictment. Their trials were later severed at Casto's request. Subsequently, McIntosh pled guilty to two counts of theft in violation of R.C.2913.02.
[2] Subsequently, it appears that McIntosh had stolen the truck.