[Cite as *State v. Jones*, 2011-Ohio-4440.]

COURT OF APPEALS
STARK  COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon.  Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon.  John W. Wise, J. |
| | : | Hon.  Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2010CA00214 |
| ELAINE M. JONES | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Stark County Court of
                                 Common Pleas Case No. 2009 CR 1565B


JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          August 29, 2010


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

KATHLEEN O. TATARSKY                       MATTHEW PETIT
Assistant Stark County Prosecutor          116 Cleveland Ave. North, Suite 808
Appellate Section                          Canton, Ohio  44702
110 Central Plaza, South-Suite 510
Canton, Ohio  44702


*Delaney, J.*

{¶1}   Defendant-Appellant, Elaine Jones, appeals the judgment of the Stark

County Court of Common Pleas, convicting her of one count of money laundering, a

felony of the third degree, in violation of R.C. 1315.55(A)(2), one count of grand theft, a violation of R.C 2913.02(A)(3), a felony of the fourth degree, one count of forgery, a violation of R.C. 2913.31(A)(3), a felony of the fifth degree, and one count of identity fraud, a violation of R.C. 2913.49(B)(2), a felony of the fourth degree. The State of Ohio is Plaintiff-Appellee.

{¶2} The facts underlying the charges are as follow:

{¶3} Michael Roma and Appellant's brother, Brian Jones, routinely entered into joint business ventures wherein Jones operated the businesses and Roma acted as the silent, investment partner.

{¶4} Roma indicated his desire to semi-retire from Roma's Radiator, a radiator and air conditioner business that he owned in Perry Township. He and Jones also became aware that Angello's Restaurant, in Perry Township, was for sale.

{¶5} In October, 2007, Roma and Jones hired Attorney Gregory Rufo to assist them in forming a limited liability company named Rom Jon for the sole purpose of purchasing Angello's Restaurant. Roma lent Jones $150,000.00 with the understanding that Jones would pay Roma back. Additionally, Roma paid for several repairs that needed to be made after Rom Jon acquired the restaurant.

{¶6} Jones was familiar with the restaurant business and agreed to operate the restaurant, including paying vendors and other bills. Roma and Jones opened two business accounts at Key Bank. One account was for payroll and one account was for operations.

{¶7} Appellant was hired as a secretary and bookkeeper for the restaurant. Her job was described by Roma as taking orders and paying everyday expenses, taxes,

and getting payroll ready to send to accounting. She had twenty years experience in bookkeeping.

{¶8} Appellant was indicted on December 14, 2009, on the above referenced charges. She entered a not guilty plea and exercised her right to a jury trial on June 1, 2010. Prior to trial, the State had filed a motion in limine to preclude Appellant from introducing evidence related to a civil lawsuit filed by Appellant against her brother, Roma, and Angello's as well as a counterclaim filed by Roma and others. The trial court stated that while the civil suit may be a relevant mitigating factor in sentencing, should Appellant be found guilty, it was irrelevant as it related to Appellant's guilt or innocence of the crimes charged. The trial court also told the parties that prior to questioning a witness regarding the civil suit, the party should first approach the bench and the court would allow the questioning "for relevance that isn't outweighed by confusion of the issues or undue prejudice." Appellant did not request to use the civil suit in questioning any of the witnesses at trial.

{¶9} During voir dire, the State exercised a peremptory challenge against Juror No. 22, the only African-American juror in the jury pool. The trial court asked the State to give its "race neutral" reason for exercising the challenge. Appellant is Caucasian; however, her attorney was African-American. The State cited the juror's negative feelings toward the court and the fact that the juror had negative body language during voir dire. The trial court agreed with the State regarding the juror's hostility towards the court proceedings in general and accepted the reason with no objection by Appellant.

{¶10} The State called three witnesses and Appellant testified on her own behalf. At the conclusion of the trial, the jury convicted Appellant of all counts in the indictment. Appellant was sentenced to five years of community control.

{¶11} Appellant now appeals her convictions and raises three Assignments of Error:

{¶12} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO EXERCISE A PEREMPTORY CHALLENGE IN VIOLATION OF BATSON V. KENTUCKY.

{¶14} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY PRECLUDING THE APPELLANT FROM CROSS EXAMINING THE STATE'S WITNESSES AND DENYING HIM OF HIS RIGHT TO DUE PROCESS."

I.

{¶15} In her first assignment of error, Appellant claims that the evidence was insufficient to support a finding of guilty and that her convictions were against the manifest weight of the evidence. We disagree.

{¶16} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172,

175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶17} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶18} In order to convict Appellant of money laundering under R.C. 1315.55(A)(2), the State had to prove as follows:

{¶19} "No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the property or the intent to avoid a transaction reporting requirement under section 1315.53 of the Revised Code or federal law."

{¶20} We find that the State presented sufficient evidence showing that Appellant committed the crime of money laundering and that such conviction was not against the weight of the evidence. The State introduced evidence that Appellant and her brother worked together to forge the letter from the Rufo law firm purporting to transfer shares of Rom Jon to Appellant for the purpose of obtaining a loan to make

improvements on her cabin. Appellant was listed as the owner of Angello's on the loan application from Merchant Cash.

{¶21} The proceeds of the loan were transferred to Key Bank on April 25, 2008, without Roma's knowledge or approval. The only signatories on the Key Bank account were Appellant and her brother. The money from the Key Bank account was proven to have been used to make improvements on a cabin in the name of Appellant.

{¶22} Appellant admitted that she applied for the loan as owner of Rom Jon using the forged letter. However, she claimed that the transfer of funds was not made with the intent to defraud Roma or to conceal or disguise the ownership and control of the property. She claimed that Roma told her to remove him from the account and that he did not want anything more to do with the business.

{¶23} Roma testified that he did not state to Appellant that he wanted nothing more to do with the restaurant and that he did not authorize the loan to Appellant.

{¶24} Appellant aided and abetted her brother in committing a forgery to obtain a loan and used the proceeds of that criminal act to open a bank account without Roma's permission and with the intent to conceal the account from Roma. Moreover, Appellant used the proceeds to further her personal interest in renovating her cabin. See *State v. Daqur*, 1st Dist. No. C-050003, 2006-Ohio-955. The evidence was sufficient to convict Appellant of money laundering and said conviction was not against the manifest weight of the evidence.

{¶25} In order to prove that Appellant was guilty of theft, the State had to prove as follows, pursuant to R.C. 2913.02(A):

{¶26} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶27} "(1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; (5) By intimidation."

{¶28} "Deception means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶29} A person's intent is determined by considering surrounding facts and circumstances. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶143, citing *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 381 N.E.2d 637. It is well settled that a person intends the natural and probable consequences of their actions. Id.

{¶30} The State presented evidence that Appellant aided and abetted her brother in committing theft by deception. She signed the loan application as the owner of Angello's restaurant for the purpose of obtaining money without the consent of Roma. The loan proceeds were transferred to the Key Bank account and then to the Fifth Third account, where Appellant used the proceeds to pay for renovation expenses for her cabin in the amount of $6,500.00.

{¶31} We again find sufficient evidence to support Appellant's conviction and find that said conviction was not against the manifest weight of the evidence.

{¶32} In order to convict Appellant of forgery, the State was required to prove, under R.C. 2913.31(A)(3), as follows:

{¶33} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

{¶34} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."

{¶35} We find that sufficient evidence existed to prove that Appellant committed forgery. Evidence was introduced that she presented herself as the owner of Angello's restaurant when she applied for the Merchant's loan and submitted the Rufo letter, stating that Roma had transferred shares of Rom Jon to her. Appellant's activity in submitting a loan application with a forged letter constitutes forgery.

{¶36} There was sufficient evidence to convict Appellant of forgery and said conviction was not against the manifest weight of the evidence.

{¶37} Finally, in order to prove that Appellant committed the crime of identity theft, the State had to prove, under R.C. 2913.49(B)(2), as follows:

{¶38} "(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following: * * *

{¶39} "(2) Represent the other person's personal identifying information as the person's own personal identifying information."

{¶40} Appellant admitted that she used an employee of Angello's personal information to apply for a credit card. Specifically, the evidence presented showed that Appellant took the information of Madeia Mendenhall from her employment application and used it to obtain an American Express credit card in Mendenhall's name. Appellant admitted that she did not have Mendenhall's permission to use her name to obtain the card, but stated that she added Mendenhall's name to the card to facilitate paying vendors of the restaurant. She also indicated to the postrelease that she took out the card in order to obtain a loan. Mendenhall testified that she did not give permission to Appellant to put her name on the card and that vendors were not paid by credit card; rather, they were always paid by check.

{¶41} We find sufficient evidence existed to convict Appellant of identity theft and that said conviction was not against the weight of the evidence.

{¶42} Appellant's first assignment of error is overruled.

II.

{¶43} In her second assignment of error, Appellant argues that the trial court erred in permitting the State to exercise a peremptory challenge against an African American juror pursuant to the Supreme Court's ruling in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. We disagree.

{¶44} In order to succeed on a *Batson* challenge, the complaining party must state a prima facie case of purposeful discrimination under *Batson,* supra. To do so, the party challenging the strike must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on

account of their race. Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition to a peremptory challenge." *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 99, 1997-Ohio-227, 676 N.E.2d 872.

{¶45} In *Hicks*, the Ohio Supreme Court set forth the *Batson* test as follows:

{¶46} "The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, *Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' Id. at 95,

106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. *Hernandez v. New York* (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409. 78 Ohio St.3d. 98-9."

{¶47} Although the striking party must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem* (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769. (per curiam); *Rice v. Collins* (2006), 546 U.S. 333, 126 S.Ct. 969, 973-74.

{¶48} Finally, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem* (1995), 514 U.S. 765, 766-767, 115 S.Ct. 1769, 1770. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365, 111 S.Ct. at 1869; *State v. Nash* (August 14, 1995), 5th Dist. No. 1995 CA 00024. This final step involves considering "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, supra, at 768, 115 S.Ct. 1769; *Rice v. Collins*, supra at 126 S.Ct. 974.

{¶49} In the case at bar, the trial court asked the jurors at the beginning of voir dire if there was anything about their prior service on a jury that would impact their ability to be fair and impartial in the present case.

{¶50} Juror No. 22 raised her hand and stated that she had served on a murder case several years ago. The court asked, "Anything about your experience that would impact your ability to sit and be fair and give your complete attention?" Juror 22 responded, "I don't know." The court then asked her to elaborate and she stated, "I didn't enjoy it."

{¶51} At that time, the court explained about the importance of the function of jury duty even though it could be a sometimes "unpleasant" experience. The court then asked the juror if she could serve on the jury and give her complete attention to the case, to which she responded, "Yeah, I guess."

{¶52} Later, during the State's voir dire of the potential jury, the prosecutor asked whether the jurors could hold the State to the burden of proof beyond a reasonable doubt. The prosecutor specifically asked Juror 22 if she could do this and she indicated by shaking her head side to side. The prosecutor then asked her if "this is a responsibility that you're willing to accept" and she indicated by stating, "Uh-huh." The prosecutor asked, "Is that a yes?" and she then nodded her head but did not answer verbally.

{¶53} Later in the proceedings, the State inquired to the jurors as to whether they could follow the law regarding aiding and abetting. Specifically, the prosecutor stated, "If one person aids and abets another in the commission of a crime, if you follow

the law as given by the Court, if find those facts proven by proof beyond a reasonable doubt, would you be able to find the Defendant guilty accordingly?"

{¶54} Several jurors indicated that they could and then when the prosecutor asked Juror 22, she stated, "I don't know. What do you mean?" The prosecutor then explained it again and asked her if she could find the Defendant guilty, and she responded, "Yeah."

{¶55} Finally, the prosecutor asked the potential jurors if anyone had ever been in a courtroom before other than for jury service. Juror 22 indicated that she had been in court "for a friend of mine's son was in court" either one or two years before. She stated that the man had been charged with drug offenses and that she "didn't think it was fair".

{¶56} The State later exercised a peremptory challenge against Juror 22, at which point the court asked the State to provide a "race neutral basis" for striking the juror. The State responded:

{¶57} "The question was posed about prior courtroom presence in the courtroom, the answer was given about the time in the courtroom about the Defendant's . . . or the son's friend a year ago, negative treatment, negative feelings. There was some equivocal answer given to the Court's questioning about feelings about being in court, about whether she could do the job, can't remember the exact answers, but there was some equivocation. And then there was some… definitely some negative body language given that, of course, didn't translate to the record, but there was definitely some negative body language, some posturing. But certainly those questions and answering responses, that did translate to the record."

{¶58} The court then asked Appellant's attorney for a comment, and the attorney stated, "I didn't see the body language, but we all heard the testimony… or the questions and responses."

{¶59} The court then stated, "Well, the fact of the matter is, I believe that the juror indicated that she was in this very courtroom, that was an individual that she knew and was a drug case, she was not happy with the result, thought it was unfair, was equivocal in earlier questioning. But the fact of the matter is, the Court sensed a certain amount of hostility which may not be directed at anybody other than the Court involving how this individual was treated. But, nevertheless, would be important in following the Court's instructions of law. And the prosecutor has shown a race neutral basis for excusing of that juror, and she will be excused. Just wanted to make a record."

{¶60} There was no objection from Appellant's trial counsel.

{¶61} Accordingly, we address this assignment of error under a plain error standard of review, because if a party fails to contest a peremptory challenge under *Batson*, that issue is waived, except for plain error. *Stewart v. Nazir*, 2nd Dist. No. 23806, 2010–Ohio–6346, ¶ 25.

{¶62} We find no error, plain or otherwise, in the trial court's granting of the State's peremptory challenge. The State gave a race neutral reason and the Appellant never articulated a prima facie case of discrimination – the trial court asked the State to give a race neutral reason and defense counsel did not even concur in asking for one. The record demonstrates that the juror was hostile towards the trial court, towards the prosecutor and that she had been in that exact courtroom and that she thought that what happened to her friend's son was "unfair."

{¶63} Under the third prong of *Batson*, the Appellant's argument also fails. After the State issued a race neutral reason for striking the juror, Appellant never argued that the juror should be kept. Accordingly, no error can be found.

{¶64} Appellant's second assignment of error is overruled.

III.

{¶65} In Appellant's third assignment of error, she argues that her rights were violated because she was not permitted to fully cross examine witnesses. We disagree.

{¶66} Trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343, 348. Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, ¶75. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore* (1967), 9 Ohio St.2d 122, 224 N.E.2d 126.

{¶67} In the present case, Appellant argues that she was prohibited from cross-examining witnesses regarding the civil lawsuit filed against her brother and Roma and the counterclaim filed by Roma. The only basis for this challenge stems from the State's motion in limine that was argued prior to the start of trial.

{¶68} The State asked that the court preclude Appellant from mentioning the lawsuit, and the court found that such evidence would be irrelevant; however, the court

stated that if a party wished to cross examine a witness regarding the issue, they could approach the bench and have a further discussion regarding the matter. The court did state that such evidence would be relevant as mitigation for sentencing should the defendant be found guilty.

{¶69} The record is void of any instances wherein Appellant's counsel approached the bench to ask to cross examine a witness regarding the lawsuit. Accordingly, we find no violation of Appellant's right of cross examination.

{¶70} Appellant's third assignment of error is overruled.

{¶71} The judgment of the Stark Count Court of Common Pleas is affirmed.

By: Delaney, J.

Farmer, P.J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |

ELAINE M. JONES                    :
                                   :
            Defendant-Appellant    :    Case No. 2010CA00214
                                   :


        For the reasons stated in our accompanying Memorandum-Opinion on file, the

judgment of the Stark County Court of Common Pleas is affirmed.  Costs assessed to

Appellant.


                                        _____
                                        HON. PATRICIA A. DELANEY


                                        _____
                                        HON. SHEILA G. FARMER


                                        _____
                                        HON. JOHN W. WISE