[Cite as *State v. Anderson*, 2024-Ohio-5515.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SAMMY FRENCHHAIL ANDERSON JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 MA 0047

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CR 00735

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Wesley A. Johnston*, for Defendant-Appellant.

Dated: November 21, 2024

**DICKEY, J.**

{¶1} Appellant, Sammy Frenchhail Anderson Jr., appeals his convictions following a jury trial in the Mahoning County Court of Common Pleas for one count of felonious assault (committed on June 15, 2023) in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree; one count of felonious assault (committed on September 14, 2023) in violation of R.C. 2903.11(A)(2) (by means of a deadly weapon or dangerous ordnance), and (D)(1)(a), a felony of the second degree with a fifty-four month firearm specification pursuant to R.C. 2941.145(D); one count of having a weapon under disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree with a fifty-four month firearm specification pursuant to R.C. 2941.145(D); and one count of aggravated menacing in violation of R.C. 2902.21(A) and (B), a misdemeanor of the first degree.

{¶2} Appellant advances two assignments of error. First, he challenges the sufficiency of the evidence supporting his conviction for felonious assault by means of a deadly weapon or dangerous ordnance and the related firearm specification. Second, he argues he received ineffective assistance of counsel based on defense counsel's failure to renew Appellant's Criminal Rule 29 motion at the close of the defense case. For the following reasons, Appellant's felonious assault conviction and the accompanying firearms specification are affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶3} On October 26, 2023, Appellant was charged by secret indictment with the crimes for which he was convicted, as well as one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A) and (B)(5), a felony of the fourth degree, for which he was acquitted. The jury trial began on April 1, 2024. Eleven witnesses offered testimony on behalf of the state at trial.

{¶4} With respect to the felonious assault committed on June 15, 2023, Officer William Burton of the Youngstown Police Department ("YPD") testified he was on routine patrol that day when he responded to a call in the area of the Plaza View Apartments and McGuffey Road. He arrived to find the victim, B.M., a thirty-two-year-old mother of five children, sitting on the road "badly, badly beaten - - with very serious injuries." (4/1/2024

Case No. 24 MA 0047

Trial Tr., p. 237). B.M.'s face was "badly, badly bruised, her eye, face[,] her nose. She was bleeding profusely from, mostly from her head, from various places on her head." (*Id.* at 238-239).

{¶5} B.M. told Officer Burton she had been beaten by Appellant, who she identified as her boyfriend. (*Id.* at 240). She and Appellant had been arguing most of the day. He beat her while he was driving her automobile then left her on the side of the road. (*Id.* at 245).

{¶6} According to the testimony of Ashley Turney, one of the emergency medical technicians ("EMT") that treated B.M., B.M. reported Appellant had beaten her while he was driving and she was a passenger in her automobile. (*Id.* at 265). Turney opined B.M.'s injuries were consistent with B.M.'s account of having been beaten. (*Id.* at 266).

{¶7} Heather Bayless, a nurse practitioner at St. Elizabeth's Hospital in Youngstown who treated B.M., testified the "entire left side of [B.M.'s] face was grossly swollen with a large amount of blood from her face as well as within her ear and scalp area." (*Id.* at 275-276). X-rays revealed B.M. had suffered multiple facial fractures. (*Id.* at 280-281).

{¶8} With respect to the felonious assault committed on September 14, 2023, YPD Officer Gregory Tackett testified he was dispatched to the north side of the city that day after police received a call for a welfare check. (*Id.* at 308). Specifically, a female called the police department and said her sister, B.M., had contacted her by text message and asked her to send police to the area of Elm Street and Bissell Avenue, because B.M. was being assaulted while a passenger in her automobile. (*Id*). Tackett was unable to locate B.M. or her automobile in the area or at her residence. (*Id.* at 306-307).

{¶9} Later that day, YPD Officer Jay Fletcher located B.M.'s abandoned automobile in the parking lot of the "Big Apple," a convenient store located in the area of McGuffey Road and Albert Street. (*Id.* at 293-294). When Officer Fletcher approached the vehicle, he noticed a "large amount of blood on the passenger seat." (*Id.* at 297).

{¶10} Officer Tackett traveled to the Big Apple and likewise noted the inside of the vehicle was "covered in blood." (*Id.* at 308). Due to the circumstances, YPD declared B.M. to be a "missing person," and attempted to locate her mobile telephone to determine if she was in distress. (*Id.* at 309). The officers were ultimately able to locate B.M. at her

residence. Officer Tackett testified she had a "large gash" on her eye, as well as "several bruises all down her body." (*Id.* at 310).

**{¶11}** Amber Jackson, an EMT, was dispatched to render aid to B.M. B.M. informed Jackson that B.M.'s ex-boyfriend (Appellant) had pistol whipped her. (*Id.* at 339.)

**{¶12}** Crime scene technicians were called to process the automobile. YPD Officer Brad Ditullo found a handgun obscured beneath some clothing in the back seat of the vehicle. (*Id.* at 371). The functioning weapon had blood on it and was fully loaded. (*Id.* at 371-372, 376-377). Subsequent forensic testing of the blood found inside the automobile revealed that it came from an "unknown female." (*Id.* at 400-402). The sample was not compared to B.M.'s DNA, however, the same unknown female's DNA was found on the firearm discovered in the back seat of the automobile. (*Id.* at 402-403).

**{¶13}** B.M. informed Officer Tackett that Appellant had beaten her with a pistol earlier in the day while he was driving and she was a passenger in her automobile. (*Id.* at 311). Specifically, B.M. told Officer Tackett that Appellant had been "striking her in the back of the head with a pistol and front of the head," then took her to an apartment near Belle Vista and East Evergreen where he attempted to coerce B.M. into washing away her blood. However, she refused. (*Id.*) At the apartment, Appellant threatened to kill B.M. while pointing a gun at her. (*Id.* at 312.) B.M. was later able to escape from Appellant and a female acquaintance drove her home. (*Id.* at 311-312). Photographs of B.M.'s injuries document a "crest moon shape[ed]" injury, "the same as. . . the base of a handgun." (*Id.* at 314).

**{¶14}** B.M. testified at trial subject to a subpoena. B.M. met and began dating Appellant in April of 2021. (*Id.* at 419.) The couple frequently argued, which typically resulted in Appellant becoming physically abusive toward B.M. (*Id.* at 419-420.) Despite consistent physical abuse, B.M. continued the relationship with Appellant. (*Id.* at 421.)

**{¶15}** B.M. was a passenger in her own automobile with Appellant, who was in the driver's seat, on June 15, 2023, when Appellant began punching her in the face, side, and arms while he was driving. (*Id.* at 423). B.M. did not retaliate due to her fear of escalating the violence. (*Id.* at 424-425.) Appellant eventually forced B.M. from her automobile.

**{¶16}** While walking to her aunt's house, B.M. called the police. (*Id.* at 428-429.) She recounted the assault to both YPD and the emergency medical technician. (*Id.* at 430.) B.M. identified Appellant as the perpetrator. (*Id.* at 433.) Despite the attack, B.M. continued her relationship with Appellant because she loved him. (*Id.*)

**{¶17}** B.M. testified she was a passenger in her automobile with Appellant, who was in the driver's seat, on the way home after visiting a friend on September 14, 2023. (*Id.* at 434.) Appellant began striking B.M. in her face, side, and arms. (*Id.* at 435.)

**{¶18}** Appellant then took B.M. to a friend's house on Evergreen Avenue where he told her to take a shower to wash the blood from her body. (*Id.*) When B.M. refused, Appellant threw her to the floor and kicked her. (*Id.* at 436-437.) Eventually, the couple left the residence and returned to B.M.'s automobile. Despite the fact that B.M. was in the back seat, Appellant "reach[ed] into the back [and hit] her with a hard object in [her] face and the back of [her] head." (*Id.* at 437.) B.M. could not identify the hard object, and denied being held at gunpoint or seeing Appellant with a handgun that day. However, B.M. testified Appellant regularly carried a handgun. (*Id.* at 437-438.)

**{¶19}** B.M. sent a text message to her sister while B.M. was in the automobile. B.M. asked her sister to call police. (*Id.* at 438.) B.M. did not call for herself because she was afraid to escalate the ongoing assault. (*Id.*) Eventually, Appellant drove to a friend's house where B.M. was able to escape. (*Id.* at 439.)

**{¶20}** Contact between B.M. and Appellant continued despite the September 14, 2023 attack. Appellant apologized to B.M. for beating her. (*Id.* at 447). Appellant also sent text messages to B.M. following the attacks. One message read:

> I don't want to lose you mommy. I'm in love with you deeply. If you take your love from me I don't know how I would carry on. I mean, I never met nobody like you, [B.M.]. I understand you don't hurt someone you love. And I really get that. I do. I know you heard this shit before. I understand that too. But baby please. I wouldn't [sic] drink anymore. I'll do whatever it takes to show you I'm here. Always have and always will be.
>
> I'm not trying to stress you out or pressure you into anything just look at my life and everything I had endured growing up. I never had a real father

or even guidance myself but that's still not an excuse for my actions as a man. Imma [sic] take my actions on the chin and be responsible for my own doing. It's nothing that can change what's been done. I can't undo all the hurt, cheating and lying these past years. But I know what I want, and it's you, your love is one and a million.

I'm sorry, love. I hate myself for all the hurt. Man, I feel like I owe you my life, [B.M.], so please really just take some time to think about us please. My grandpa used to beat my grandma to death; broke her nose. That's why her nose so big. But they made it through. I feel like we can make it too.

From here on out I promise not to put any street shit before our family that we do have our six kids. And our love is all we need. And I promise we gonna make it out this ho on God. [sic] I'm so sorry beautiful. You [sic] my wife man. I'm hurt and I take full responsibility for my mistakes. Please forgive me, my love.

(*Id.* at 449-450.)

**{¶21}** In another text message sent to B.M. from Appellant on September 22, 2023, he wrote in part, "I tried to call sis so I can have her tell you that I love you and that I'm sorry for my actions. I really am. I don't want this to be this way B. I messed up. . . I know you'll never forget what I have put you through. I just hope you find it in your heart somewhere to forgive me man." (*Id.* at 451.)

**{¶22}** YPD Detective Jerry Fulmer led the criminal investigation. An arrest warrant was issued in June relative to the first incident, but Appellant was not arrested because he could not be found. (*Id.* at 496.)

**{¶23}** Eventually, when Appellant was arrested, investigators searched his mobile telephone and discovered a video depicting him stepping on B.M.'s face. (*Id.* at 319.) Appellant was wearing the same pants and shoes in the video as he was wearing when he was arrested. (*Id.* at 320.) Appellant identified B.M. as the victim in the video. (*Id.* at 351.) Forensic investigation of Appellant's mobile telephone established the video was recorded on September 14, 2023 at 4:21 p.m. (*Id.* at 353.)

**{¶24}** Appellant's mobile telephone also had a photograph of the same handgun that was found in the back of B.M.'s automobile. (*Id.* at 509-510.) Appellant was under a firearm disability, and proof of Appellant's prior disqualifying convictions were offered to the jury. (*Id.* at 519-521.) Finally, Detective Fulmer testified Appellant called B.M. 1,417 times since his arrest. (*Id.* at 522-523.)

**{¶25}** At the close of the state's case, defense counsel made an oral motion for acquittal. He argued, "I will point to the fact that this case includes some weapons charges where B.M. did indicate that she never saw him with a weapon that particular day." (*Id.* at p. 575-576.) The trial court overruled the oral motion, reasoning that "[s]o as far as the gun charge goes, she said she was beaten with a hard object. There was a bloody gun in the back seat where she was beaten. I think the jury can make some inferences that the gun was used, you know, in the commission of that beating, or crime." (*Id.* at 576-577.)

**{¶26}** The defense rested without calling any witnesses. Defense counsel did not renew his Rule 29 motion.

**{¶27}** After roughly two hours of deliberation, the jury found Appellant guilty of all counts and specifications, with the exception of the grand theft charge. The trial court imposed an eight-to-twelve-year prison term on the felonious assault conviction committed on June 15, 2023; an eight-to-twelve-year prison term on the felonious assault conviction committed on September 14, 2023, plus the mandatory fifty-four month sentence on the firearm specification; thirty-six months on the weapon under disability conviction, plus the mandatory fifty-four month sentence on the firearm specification; and, one-hundred eighty days on the aggravated menacing conviction. The trial court imposed the sentences on the felonious assault convictions to be served concurrently, but consecutively to the weapon under disability charge for an aggregate sentence of fifteen-and-one-half years to nineteen-and-one-half years. The trial court ordered the misdemeanor sentence to be served concurrently to the felony sentences.

**{¶28}** Appellant's assignments of error are interrelated. As a consequence, they are addressed together, and out of order, for clarity of analysis.

## ASSIGNMENT OF ERROR NO. 2

**[APPELLANT] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN [DEFENSE COUNSEL] FAILED TO RENEW THE RULE 29 MOTION AT THE CLOSE OF THE DEFENSE'S CASE.**

{¶29} Appellant asserts defense counsel's failure to renew his motion for acquittal at the close of the defense case constitutes ineffective assistance of counsel.  In order to demonstrate a claim of ineffective assistance of counsel, an appellant must show defense counsel deprived him of a fair trial.  Specifically, an appellant must show: (1) defense counsel's performance at trial was deficient; and (2) the result of the trial would have been different if defense counsel had provided proper representation at trial. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Brooks*, 25 Ohio St.3d 144 (1986). Appellant contends he has suffered prejudice because the appellate standard of review is plain error as a consequence of defense counsel's failure to renew the motion.

{¶30} To the contrary, the failure to move for acquittal pursuant to Crim.R. 29 at trial does not result in the waiver of a challenge to the sufficiency of the evidence underlying a conviction on appeal. *State v. Jones*, 91 Ohio St.3d 335 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223 (1994). Appellant's "not guilty" plea preserved his right to challenge his convictions based on insufficient evidence. *Jones*, 91 Ohio St.3d at 346. In the alternative, a conviction based on insufficient evidence typically constitutes plain error. *State v. Gorayeb*, 2010-Ohio-2535, ¶ 13 (7th Dist.).  Accordingly, we find Appellant's second assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 1

**THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT [APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT (COMMITTED ON SEPTEMBER 14, 2023)] AND THE FIREARM SPECIFICATION CONTAINED WITHIN THE INDICTMENT.**

**{¶31}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶32}** Having reviewed the record, we find there was sufficient evidence offered at trial to support the challenged felonious assault by means of a deadly weapon or dangerous ordnance conviction and the accompanying firearm specification. Although B.M. denied seeing Appellant use a handgun at trial, she conceded that she could not identify the "hard object" Appellant employed during the beating on September 14, 2023. Further, a handgun was found in the back seat of B.M.'s vehicle, where the assault with the "hard object" occurred, and it had the blood of the same "unidentified female" as the blood found in B.M.'s automobile. Testimony established one of B.M.'s head injuries was consistent with an assault with a handgun. Finally, testimony from an investigating officer and an EMT established that B.M. reported being assaulted with a pistol on September 14, 2023. Accordingly, we find Appellant's first assignment of error has no merit.

## CONCLUSION

**{¶33}** For the foregoing reasons, Appellant's felonious assault by means of a deadly weapon or dangerous ordnance conviction and the accompanying firearm specification are affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 24 MA 0047

[Cite as *State v. Anderson*, 2024-Ohio-5515.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**